RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0016p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-4092

ANDRE D. HATCHER, JR.,

*Defendant-Appellant*.

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:17-cr-00287-1—John R. Adams, District Judge.

Argued: December 4, 2019

Decided and Filed: January 13, 2020

Before: MOORE, CLAY, and SUTTON, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Christopher M. Bruno, MCDERMOTT WILL & EMERY, LLP, Washington, D.C., for Appellant. James A. Ewing, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Christopher M. Bruno, Paul M. Schoenhard, Le Chen, MCDERMOTT WILL & EMERY, LLP, Washington, D.C., Christopher M. Bruno, TENSEGRITY LAW GROUP LLP, McLean, Virginia, for Appellant. Ranya Elzein, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

MOORE, J., delivered the opinion of the court in which CLAY, J., joined. SUTTON, J. (pp. 16–20), delivered a separate dissenting opinion.

————————————

**OPINION**

————————————

KAREN NELSON MOORE, Circuit Judge.  Andre Hatcher, Jr. pleaded guilty to felon in possession of a firearm and escape, and the district court sentenced him to seventy-two months in prison, which was an upward variance of twenty-one months from the top of the Guidelines range.  Hatcher now appeals this sentence on the grounds that it is procedurally and substantively unreasonable.  For the reasons set forth in this opinion, we **VACATE** the sentence of the district court and **REMAND** for resentencing consistent with this opinion.

## I.  BACKGROUND

On March 16, 2017, Andre Hatcher, Jr. escaped from the Oriana House Residential Reentry Center (RCC), where he was confined by virtue of a forty-six-month sentence for felon in possession of a firearm.  R. 17 (PSR ¶ 10) (Page ID #97).  On April 13, 2017, law enforcement responded to a call regarding a shooting and found Hatcher lying on the ground with a gunshot wound to the head.  *Id.* ¶ 8.  While performing first aid on Hatcher, an officer observed a firearm tucked in Hatcher's waistband.  *Id.*  After Hatcher was taken to the hospital, he left and was not apprehended until May 2018, when he was found by law enforcement after being shot again.  R. 28 (Sent'g Hr'g Tr. at 12) (Page ID #153).

On July 19, 2017, Hatcher was named in a one-count indictment.  R. 1 (Indictment) (Page ID #1).  On May 30, 2018, after Hatcher's recapture, a two-count Superseding Indictment was filed, adding a count for his escape from the RCC.  R. 11 (Superseding Indictment ¶ 2) (Page ID #31).  On July 9, 2018, Hatcher pleaded guilty to both counts:  Felon in Possession of a Firearm and Ammunition (Count 1), 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(a)(2); and Escape (Count 2), 18 U.S.C. § 751(a).

On October 5, 2018, the district court gave notice of a possible upward variance in advance of Hatcher's sentencing hearing, based upon the following 18 U.S.C. § 3553(a) factors:

1. The nature and circumstances of the offense.
2. The history and characteristics of the defendant, including his criminal history.
3. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendants.

R. 19-1 (Notice of Possible Upward Variance) (Page ID #125).

The sentencing hearing took place on October 18, 2018. At the hearing, the parties agreed that the guidelines range was forty-one to fifty-one months, and the district court reiterated that it had given notice of a possible upward variance. R. 26 (Sent'g Hr'g Tr. at 5) (Page ID #146). Hatcher's counsel proceeded to provide background on the adversity that Hatcher had encountered throughout his life, including multiple stabbings and gunshot wounds, a physically abusive father, diagnoses for bipolar disorder and depression, attempted suicide, and a history of extensive substance abuse. *Id.* at 5–9. The government then stated it was seeking a sentence "at the high end of the guideline range." *Id.* at 11.[1]

During its statement, the Assistant U.S. Attorney responded to Hatcher's assertion that he carried the firearm for protection as follows:

> I would submit that the possession of the firearm was not solely for protection. The investigation revealed that shell casings discovered from a shooting three days prior to when the defendant was shot [on April 13, 2017] matched the firearm that he had on his person.
>
> So while, of course, I don't know the specifics of what happened then, I think that certainly suggest[s] a possibility that the defendant was involved in a shooting three days prior and perhaps his victimization on the day of the offense was in retaliation for that. I don't know.

*Id.* at 11–12. The AUSA then confirmed with the district court that the government had shell casings that matched the firearm found on Hatcher, and stated: "He keeps going back to this

---

[1]Pursuant to the parties' Rule 11(c)(1)(B) plea agreement, the parties were obligated to recommend a sentence within the guidelines range. R. 13 (Plea Agreement ¶ 12) (Page ID #39).

very same difficult area, and he keeps being involved in these difficult situations and these violent situations." *Id.* at 12. An ATF special agent affirmed that the firearm was used three days prior to when Hatcher was shot on April 13; that in the course of the earlier shooting, two non-party victims were shot; and that one of the victims may have fired at the other. *Id.* at 15. Of the seven spent shell casings, four matched the firearm found on Hatcher three days later. *Id.*

The district court and Hatcher's counsel then debated whether Hatcher was justified in escaping from the RCC. *Id.* at 15–18. The district court rejected Hatcher's argument and stated: "And that's why he's going off unfortunately to serve a very lengthy time, because the circumstances here and the history here, the possession of the gun, and obviously the gun, whether it's by him or someone else, certainly willing to use it." *Id.* at 18. The district court continued:

> He leaves and he absconds and the timeline, as the government sets forth as is agreed. He gets shot. He leaves. He absconds. We don't discover him until 13 months later. At that time, he has a loaded firearm on him which, again, we can't prove definitively that he is the one that used that firearm to shoot other individuals or discharge it, but three days earlier, that same handgun had been used and discharged. So we know that.

*Id.* at 19. The district court then stated that Hatcher had "five juvenile convictions ranging from criminal trespass, burglary, two adult convictions for robbery and he has a federal felon in possession of a firearm." *Id.* at 19–20.

After recounting this background, the district court acknowledged that there would be a sentencing disparity "because I intend to vary upward based upon the conduct and the record of this defendant and the fact that he's previously served a stint in prison for just the same offense for which he's here for now." *Id.* at 20. The district court then explained that Hatcher had a violent record, adding that "as we now know, of course, [Hatcher] returned to the old neighborhood and continued to use a firearm or have a firearm on or about his person." *Id.* at 21. Returning once more to Hatcher's argument that he fled the RCC out of fear, the district court stated:

> There's other ways he could have gone about this rather than escape, and then almost immediately gets involved again in violent conduct either on his own behalf or in interaction with others resulting in his own injury.

*Id.* at 22. The district court concluded that "for those reasons," it would sentence Hatcher to seventy-two months in prison. *Id.*[2] Confirming that this sentence was an upward variance from the fifty-one months at the top of the guidelines range, the district court stated that "[i]t's necessary for all the reasons I've just stated." *Id.*

Upon the district court's inquiry regarding any objections under *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), Hatcher's counsel stated, "[C]learly I would object to the court's upward variance and ask the court to reconsider that." R. 26 (Sent'g Hr'g Tr. at 25) (Page ID #166). The district court responded that Hatcher's prior, forty-six-month sentence was insufficient to deter him from criminal conduct, and that "within a short period of time upon his escape . . . he once, again, returned to the same life-style and possession of a firearm, which is cause for the court's upward variance." *Id.*

Hatcher timely appealed his sentence.

## II. DISCUSSION

On appeal, Hatcher claims that his sentence was unreasonable for three reasons. First, he claims that the district court's reliance on his alleged involvement in the April 10, 2017, shooting was surprising and prejudicial. Second, he claims that a preponderance of the evidence did not support the district court's reliance on his alleged involvement in this shooting. Third, he claims that the district court erred in misstating the number of adult convictions for robbery that are in his criminal record. It is undisputed that the first and third claims are claims of procedural error; the parties dispute whether the second is a claim of procedural or substantive error. We conclude that, regardless of the standard of review, the district court committed reversible error with respect to the first and second claims, and committed harmless error with respect to the third claim.

---

[2]The district court made two technical errors in imposing this sentence, which it corrected promptly. First, the district court initially stated that it would impose a sentence of "17 months on each count," and then changed this number to seventy-two. R. 26 (Sent'g Hr'g Tr. at 22) (Page ID #163). Second, the statutory maximum on Count 2 was sixty-months, so the district court amended the sentence to sixty-months on Count 2 to run concurrently with the seventy-two-month sentence on Count 1. *Id.* at 24–25.

**A. Standard of Review on Procedural Reasonableness Claims**

As a preliminary matter, the parties dispute whether Hatcher's procedural reasonableness claims are reviewed for abuse of discretion or plain error. Although Hatcher stated that he objected "to the court's upward variance," *id.*, the government correctly points out that he did not object to "any specific procedural deficiencies at the sentencing hearing." Appellee Br. at 23. Hatcher tellingly offers no argument in response. In the context of claims of procedural error, we have held that when a defendant objects "at such a high degree of generality that the district court has no opportunity to correct its purported error and the court of appeals has been deprived of a more detailed record to review," plain-error review applies. *United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009). For this reason, we conclude that Hatcher has not preserved his claims of procedural error, and we will review these claims for plain error. "A 'plain error' is an error that is clear or obvious, and if it affects substantial rights, it may be noticed by an appellate court." *United States v. Barajas–Nunez*, 91 F.3d 826, 830 (6th Cir. 1996) (citations omitted). This court "should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 736 (1993) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)) (alteration in original).

**B. Hatcher's Procedural Reasonableness Claims**

The parties agree that Hatcher's first and third claims relate to procedural reasonableness. The first claim challenges the district court's improper reliance on Hatcher's alleged involvement in the earlier shooting, and the third challenges the district court's mistaken reference to two adult convictions for robbery. Both claims demonstrate plain error in the district court's sentence, but only the first demonstrates reversible error.

**1. The District Court's Reliance on Surprising and Prejudicial Information**

For Hatcher's first claim, we must determine as an initial matter whether or not the district court actually relied on a belief that Hatcher was involved in the uncharged, April 10 shooting in sentencing him. A sentencing court commits procedural error in this manner "only if it based the defendant's sentence on . . . erroneous information." *United States v. Adams*,

873 F.3d 512, 518 (6th Cir. 2017).  This requires the court to "look to the sentencing decision with an eye for whether the information in question appears to have been 'an important factor in determining [the] sentence.'"  *United States v. Wilson*, 614 F.3d 219, 224 n.3 (6th Cir. 2010) (quoting *United States v. González–Castillo*, 562 F.3d 80, 81 (1st Cir. 2009)).  In short, there can be no error unless the district court relied on the information being challenged.

Although Hatcher may overstate the individual weight of each of the four references by the district court to the uncharged shooting, the four references taken together—and the final reference, in particular—represent an unambiguous reliance on this information.  The first reference is moderately indicative of reliance.  The district court stated that Hatcher is "going off unfortunately to serve a very lengthy time" in part because of "the gun, whether it's by him or someone else, certainly willing to use it."  R. 26 (Sent'g Hr'g Tr. at 18) (Page ID #159).  Given the colloquy that had just transpired regarding Hatcher's possible use of the firearm in the shooting three days earlier, it is likely that the district court referred here to that shooting.  At the same time, Hatcher's criminal record is replete with violent conduct, and this statement could be a mere observation that Hatcher was "certainly willing" to use violence against others.  *Id.*  The second and third references are less clear than the first.  The second reference appears during the district court's recounting of the events as presented at the sentencing hearing; there is no indication that the district court relied on the observation that "th[e] same handgun had been used and discharged."  *Id.* at 19.  The third reference similarly does not indicate definitively whether the district court would rely on Hatcher's alleged participation in the shooting in sentencing him.  The district court's disjunctive conclusion—that Hatcher "continued to use a firearm *or* have a firearm on or about his person," *id.* at 21 (emphasis added)—makes it uncertain whether, in this particular statement, the district court relied on Hatcher's involvement in the uncharged shooting in sentencing him.

The fourth and final reference, however, clearly incorporates Hatcher's alleged involvement in the prior shooting into the district court's sentence.  The district court stated that "almost immediately" after Hatcher escaped from the RCC in March 2017, he "g[ot] involved again in violent conduct either on his own behalf or in interaction with others resulting in his own injury," and then stated that "for those reasons," the upward variance was necessary.  *Id.* at

22. Unlike in the first statement, in which the district court's suggestion that Hatcher was "certainly willing to use" the gun could have been a reference to other incidents of violence in his record, this statement explicitly identifies the violent conduct that took place "almost immediately" after Hatcher left the RCC. This could only correspond to two incidents: the uncharged shooting (on April 10) and an unknown assailant shooting Hatcher three days later (on April 13). The subsequent phrase—"either on his own behalf or in interaction with others"—confirms that the district court was referring to Hatcher's alleged involvement in the uncharged shooting, not to him being shot three days later. *Id.* That is, the phrase "immediately gets involved again in violent conduct either on his own behalf or in interaction with others" cannot mean "immediately gets shot."[3] The statement is an unmistakable observation that Hatcher was involved in the uncharged shooting, and that this information, in part, justifies the lengthy sentence. Without question, the reliance is not as clear as in *United States v. Fleming*, for example, in which "[t]he district court explicitly said that its decision to double Fleming's sentence was based on [a local news] article, explaining that the article was '[i]n large part . . . some indication of why long, lengthy sentences are necessary to try and deter' cocaine trafficking." 894 F.3d 764, 768 (6th Cir. 2018) (alterations in original). Yet we have vacated sentences based on district court statements that signal less obvious reliance on impermissible considerations, when such statements "imply" consideration of such information rather than explicitly relying on it. *United States v. Hughes*, 283 F. App'x 345, 353–54 (6th Cir. 2008) ("[T]he record implies that the district court *may* have considered the circumstances surrounding the government's decision to prosecute Hughes when fashioning his sentence.") (emphasis added). In this case, the district court's last reference to Hatcher's "violent conduct," in particular, manifests clear reliance on a belief that Hatcher was involved in the April 10 shooting as a reason to impose a lengthy sentence.

---

[3]The dissent believes otherwise. In its view, the district court's statement that Hatcher became "involved again" in violent conduct most naturally refers to Hatcher being the victim of a crime (one in which he apparently did not fight back, *see* R. 17 (PSR ¶ 8) (Page ID #97)), rather than to him firing a weapon in a shootout. We are unable to comprehend why the district court would refer to an incident in which Hatcher was shot once from behind in an assassination-style hit as him regrettably becoming "involved again in violent conduct." R. 26 (Sent'g Hr'g Tr. at 22) (Page ID #163).

Having determined that the district court did, in fact, rely on Hatcher's alleged involvement in the uncharged shooting in fashioning his sentence, the next question is whether this reliance was procedurally unreasonable. One way in which a sentence may be procedurally unreasonable is when "the facts or issues on which the district court relied to impose a variance came as a surprise and [the defendant's] presentation to the court was prejudiced by the surprise." *United States v. Coppenger*, 775 F.3d 799, 804 (6th Cir. 2015) (quoting *United States v. Rossi*, 422 F. App'x 425, 432 (6th Cir. 2011)). We have concluded that a defendant was surprised by such "facts or issues," for example, when a sentencing court relied on information that was "neither signaled in the presentence report nor otherwise reasonably foreseeable." *Id.* A defendant may be prejudiced by such surprise when he or his counsel do not have "a meaningful opportunity to contest the veracity or relevance of the information" relied upon by the district court. *Fleming*, 894 F.3d at 769.

Hatcher argues first that the district court's consideration of the uncharged shooting was surprising because, despite the parties' plea agreement allowing the government to submit any relevant sentencing information for inclusion in the PSR, the PSR did not mention the shooting. Appellant Br. at 8, 20.[4] The notice of possible upward variance from the district court is similarly silent as to the shooting. The government responds that the information could not have been surprising because "the government disclosed the specific facts as part of discovery," it was "relevant to the danger to the community" that "bullets" from the firearm Hatcher possessed were found at a shooting three days earlier, and the district court provided written notice in advance of the hearing that it was considering varying upward. Appellee Br. at 26, 28.

None of the government's arguments are persuasive. Neither the PSR nor the notice of possible upward variance put Hatcher on notice that this information would be relied upon at sentencing. The fact that some information regarding the uncharged shooting was provided to Hatcher in discovery does not alter the fact that neither Hatcher nor his counsel could have "anticipate[d] the weight the court ultimately assigned to th[is] consideration" at sentencing.

---

[4]Hatcher adds that if the government intended to rely on this information at sentencing, it was required to file this information with the district court no later than one week prior to sentencing, Appellant Br. at 20, but as he acknowledges later in his brief, "the Government did not even allege . . . that Mr. Hatcher was involved in or fired a gun at the Uncharged Shooting," *id.* at 27.

*Coppenger*, 775 U.S. at 805.  The district court did "not just ma[k]e in passing" a reference to this information, *Fleming*, 894 F.3d at 769, but rather inquired about the shooting repeatedly and explicitly regarded it as a reason for the upward variance.  In considering what type of issues Hatcher's counsel should have expected to arise at the hearing, we find useful the Supreme Court's discussion in *Irizarry v. United States* of how a "competent lawyer" would typically prepare for sentencing.  553 U.S. 708, 716 (2008) (quoting *United States v. Vega-Santiago*, 519 F.3d 1, 5 (1st Cir. 2008)).  In the Supreme Court's view, defense counsel can "anticipate most of what might occur at the sentencing hearing . . . based on the trial, the pre-sentence report, the exchanges of the parties concerning the report, and the preparation of mitigation evidence." *Id.* (quoting *Vega-Santiago*, 519 F.3d at 5).  Here, Hatcher did not go to trial; the presentence report was silent as to the uncharged shooting, so there was no exchange about the PSR putting Hatcher or his counsel on notice of this issue; and investigation into an uncharged event does not fall into the scope of preparing mitigation evidence.

Although Hatcher was on notice that his sentencing would involve consideration of his danger to the community, this did not make him aware that evidence of a prior shooting—to which not even the government alleged he was connected—would be relevant.  It is true that, unlike in *Fleming*, *Coppenger*, and other cases in this circuit, the defendant here could have somehow ascertained the information upon which the district court would rely at sentencing. *Cf. United States v. Penny*, 777 F. App'x 142 (6th Cir. 2019) (district court relied on information from a codefendant's confidential proffer, preventing the defendant from ascertaining the information prior to sentencing).  But the question is not whether there was some conceivable way for the defendant to find out the allegedly surprising information prior to sentencing; rather, it is whether such information was included in the presentence report or was "otherwise reasonably foreseeable." *Coppenger*, 775 F.3d at 804.  In this case, it was not.

The next question is whether this surprise prejudiced Hatcher.  There are several reasons why it did.  First, the district court did not make clear its intention to rely on Hatcher's alleged participation in the April 10 shooting until it announced his sentence.  Specifically, the district court's fourth and final reference to this shooting—the clearest reference linking Hatcher to the shooting and incorporating this information into the sentence—came immediately before the

district court stated that it would sentence Hatcher to seventy-two months in prison.  As in *Fleming*, once this reliance was made clear, "the train had left the station and the court was already rendering its sentence."  894 F.3d at 771.  Second, even if the district court had clarified earlier that it would rely on this information, the suddenness of this information's relevance to Hatcher's sentence left his counsel without a "meaningful opportunity," *id.* at 769, to attack the inference drawn by the district court.  As Hatcher makes clear in his brief, had he known beforehand that this information would be relied upon at sentencing, his counsel could have asked the district court for a formal evidentiary hearing to cross-examine Agent Hartnett and others involved in the investigation of the April 10 shooting; requested a testing of the alleged bullet casings to determine if, in fact, they matched the firearm found on his person; and interviewed witnesses of the April 10 shooting to develop testimony.  Appellant Br. at 22.  This distinguishes Hatcher's case from those in which the defendant fails to show how he might have challenged the relied-upon information.  *See Rossi*, 422 F. App'x at 433–34 ("Rossi argues only generally that '[n]othing about the sentencing proceedings . . . suggested the need to marshal arguments against a 144–month sentence,' Appellant Br. at 11, but does not indicate what he would have done differently at the sentencing hearing.").

It is true that, unlike in *Fleming*, for example, counsel for the defendant did not make any contemporaneous objection to the relevance of this information or indicate any need for a further evidentiary hearing on this issue.  *See Penny*, 777 F. App'x at 148 (noting in the context of prejudicial surprise that the defendant failed to object to the district court's announcement that it would rely on the relevant information).  Even if the district court earlier had announced its intention to rely on Hatcher's alleged involvement in the April 10 shooting, however, it would be improper for this court to foreclose Hatcher's procedural reasonableness challenge simply because his counsel did not object.  As in *Fleming*, "a meaningful opportunity" for defense counsel to address the information at sentencing would have "allow[ed] counsel time to digest the information" and form a coherent response.  894 F.3d at 769.  Furthermore, to accept the government's argument that there was no prejudice because "counsel did not object to the introduction of the information at sentencing, nor did counsel either ask for the opportunity to question the case agent or ask for a continuance to conduct further investigation," Appellee Br. at 26, would render superfluous the application of plain-error review to Hatcher's claim—there

would be no inquiry into whether the defendant's substantial rights were affected, by virtue of failing to object and thereby failing to show prejudice. As we have explained, a defendant's "failure to object to the error . . . of course provides the reason why he must meet the rigorous plain error standard. But this failure, in and of itself, does not provide a basis for concluding that [the defendant] failed to demonstrate a 'reasonable probability' that his substantial rights were affected." *United States v. Monie*, 858 F.3d 1029, 1032 (6th Cir. 2017) (quoting *United States v. Sanya*, 774 F.3d 812, 818 (4th Cir. 2014)). For the foregoing reasons, the district court's reliance on Hatcher's alleged involvement in the April 10 shooting constituted procedural error as a prejudicial surprise to Hatcher.

We further conclude that the district court's sentence contained "not only procedural error, but plain error, that was not harmless." *Coppenger*, 775 F.3d at 806. The preceding analysis demonstrates why there was plain error here: The district court should have realized that it relied upon information "that the parties might reasonably not have anticipated would be relevant." *Fleming*, 894 F.3d at 771. As explained above, the district court's reliance on this information at sentencing was explicit and there was no indication prior to sentencing that Hatcher could have been aware that this information would play a significant role in his sentencing. The plain error also affected Hatcher's substantial rights. "A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, she would have received a more favorable sentence." *Wilson*, 614 F.3d at 223.[5] "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. *United States v. Bagley*, 473 U.S. 667, 682 (1985). The district court explained its upward variance in part by reference to Hatcher's "violent conduct" immediately after escaping from the RCC, which, as discussed, unmistakably refers to the April 10 shooting. There is a sufficient probability that, had Hatcher been able to subject this belief to meaningful adversarial testing, he would have demonstrated that he was not involved in the shooting, and that his sentence would have been lower. Finally, as in *Fleming* and *Coppenger*, this procedural error affected the "fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736

---

[5]We have also articulated a "second interpretation" of substantial rights—"[t]he substantial right to be sentenced pursuant to § 3553(c)," without reliance on impermissible factors—that need not be addressed here. *United States v. Cabrera*, 811 F.3d 801, 812–14 (6th Cir. 2016).

(quoting *Atkinson*, 297 U.S. at 160).  That the district court relied on information that even the government had not explicitly advanced as a basis for enhancing Hatcher's sentence, without an opportunity for Hatcher to subject this information to robust, critical examination, satisfies this final requirement of the plain-error standard.

### 2.  The District Court's Reliance on Mistaken Criminal History Information

Our assessment of Hatcher's procedural reasonableness claim relating to his adult convictions for robbery is simpler.  Hatcher has only one adult conviction for robbery, *see* R. 17 (PSR ¶ 41) (Page ID #103), but the district court stated that he had two.  R. 26 (Sent'g Hr'g Tr. at 19) (Page ID #160).  The government concedes that this error was obvious or clear.  *See* Appellee Br. at 40.  The error did not affect Hatcher's substantial rights, however, because 1) the misstated number of robbery convictions did not alter Hatcher's criminal history score, which the district court correctly found, R. 26 (Sent'g Hr'g Tr. at 5) (Page ID #146), and 2) more significantly, the district court emphasized Hatcher's assault conviction—as opposed to the number of adult robbery convictions Hatcher had—when stating that he had a propensity for violence.  There is no indication in the record—let alone a "reasonable probability," *Bagley*, 473 U.S. at 682—that the mistaken statement regarding two adult robbery convictions affected the district court's sentence.  This error was harmless.

### C.  Hatcher's Remaining Claim

The parties dispute whether Hatcher's remaining claim—that the district court relied on an impermissible factor in sentencing him—relates to procedural or substantive reasonableness. If the claim were for procedural error, we would consider it as we have considered the two claims above.  If the claim were for substantive error, however, having concluded that Hatcher's sentence was procedurally unreasonable, we would not address this claim.  *See Adams*, 873 F.3d at 520 (citing *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007)) ("When reviewing a sentence's reasonableness, we typically first address the procedural reasonableness of a sentence and do not analyze its substantive reasonableness unless the sentence is 'procedurally sound.'"). Without deciding whether the claim more properly fits under the heading of procedural or substantive reasonableness, in the interest of providing clarity on remand, we will address the

district court's reliance on Hatcher's involvement in the April 10 shooting as a procedural reasonableness issue.

District courts are permitted to make "reasonable inferences from facts in the record when fashioning a sentence." *United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019). These inferences must be supported by a preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 157 (1997) (permitting consideration of conduct underlying an acquitted charge "so long as that conduct has been proved by a preponderance of the evidence"); *United States v. Mendez*, 498 F.3d 423, 426 (6th Cir. 2007) ("*Watts* preceded [*United States v.*] *Booker*, [543 U.S. 220 (2005),] but this court has repeatedly held since *Booker* that sentencing courts may still find facts using the preponderance-of-the-evidence standard."). Hatcher argues that the district court's inference that he was involved in the April 10 shooting was "unsupported" by the record. Appellant Br. at 36. We agree. The record plainly demonstrates that a preponderance of the record evidence did not support the district court's reliance on Hatcher's alleged involvement in the April 10 shooting. In lieu of actual evidence linking Hatcher to the April 10 shooting, the government offered the unsworn testimony of an ATF special agent who claimed that four shell casings from that shooting matched the firearm found on Hatcher three days later. The government provided no documentation to support this assertion and acknowledged that "since no one would cooperate [in the investigation of the April 10 shooting], they could never prove that or solve that case." R. 26 (Sent'g Hr'g Tr. at 15) (Page ID #156). The government did not even allege that Hatcher was involved in the shooting; the Assistant U.S. Attorney only stated that it was a "possibility" and "I don't know." *Id.* at 11–12. Put simply, "the district court was imputing some nefarious conduct to [Hatcher] that the record simply does not support." *United States v. Heard*, 749 F. App'x 367, 384 (6th Cir. 2018) (Moore, J., dissenting). To rely on such an inference based on a complete absence of record evidence was plain error.[6]

---

[6]The dissent theorizes several other ways in which the district court could have believed that Hatcher was connected to the firearm, such as negligently letting it fall into someone else's hands. Besides the fact that the district court's references to Hatcher's involvement in the April 10 shooting unambiguously place him as the shooter, the parties did not advance any of the theories suggested by the dissent, nor does the record indicate that the district court relied on any of them at sentencing.

We have held in other cases that a district court may not rely on similarly threadbare evidence to connect a defendant to other criminal conduct for sentencing purposes.  *See United States v. Van*, 541 F. App'x 592, 594 (6th Cir. 2013) (holding that district court's reliance on a belief that the defendant's crime "must have been part of a greater 'scheme'" was unreasonable); *United States v. Blackman*, 625 F. App'x 231, 237 (6th Cir. 2015) (holding that district court's inference that a defendant's picture of himself with a firearm necessarily connected that firearm with the defendant's involvement in a drug-trafficking conspiracy was unreasonable).  *See also United States v. Worex,* 420 F. App'x 546 (6th Cir. 2011) (holding that district court, in sentencing the defendant to an upward variance, erred in failing to find by a preponderance of the evidence that the defendant had been involved in uncharged criminal activity).  Given the lack of evidence before the district court at the sentencing hearing related to the April 10 shooting, "[o]nly through supposition and 'mere allegation'" could the district court have relied on Hatcher's alleged involvement in that shooting in sentencing him.  *Blackman*, 625 F. App'x at 237 (quoting *United States v. Robison*, 904 F.2d 365, 371 (6th Cir. 1990)).

As for Hatcher's substantial rights, for the same reasons discussed *supra* Part II.B.1., there is a reasonable probability that his sentence would have been lower had the district court not relied in part upon a belief that Hatcher was involved in the April 10 shooting.  Finally, as this court held in *Wilson*, "basing a criminal sentence on a non-existent material fact threatens to compromise the fairness, integrity, or public reputation of [judicial] proceedings."  614 F.3d at 225 (quoting *González–Castillo*, 562 F.3d at 83).  Given that the district court based its sentence in part on a belief unsupported by the factual record, this prong of the plain-error standard is satisfied.

### III.  CONCLUSION

For the foregoing reasons, we **VACATE** Hatcher's sentence and **REMAND** for resentencing consistent with this opinion.

---

**DISSENT**

---

SUTTON, Circuit Judge, dissenting. Andre Hatcher has twice illegally possessed a firearm, and twice escaped from custody. His last sentence was for 46 months. To prevent a third turn of the wheel, the district court varied Hatcher's sentence 21 months above the guidelines range from 51 months to 72 months. That was a reasonable decision. The majority assumes that plain-error review applies to his new arguments on appeal. I agree. But the court then concludes that he has met this lofty standard. I respectfully disagree.

As a juvenile, Hatcher collected convictions for burglary, theft, trespass, menacing, intimidating a witness, and assault. As an adult, he served two years for robbery and felonious assault. Only a year after his release, police caught him with a pistol, earning him a 46-month felon-in-possession sentence. He then escaped from federal custody and returned to his old neighborhood. There he lived on the lam until an unknown assailant shot him, at which point authorities discovered another firearm on him. He was taken to a hospital for medical treatment, only to escape again and return to his neighborhood. Authorities found him about a year later after he became the victim of yet another shooting.

The district court fairly thought a record like this raises public safety concerns. Chief among them, Hatcher previously received a sentence of 46 months for being a felon-in-possession, and that sentence did not deter him from committing the same offense in the same neighborhood soon after. Because Hatcher's guidelines range topped out at 51 months, just five months over his prior 46-month sentence for the same offense, the district court opted to vary upward.

This rationale formed the primary basis for Hatcher's sentence. When Hatcher lodged a general objection to the length of his sentence in response to the district court's *United States v. Bostic* question, 371 F.3d 865 (6th Cir. 2004), the court said this:

> Again, a 46-month sentence that had been earlier imposed for a felon in possession was not sufficient to deter the defendant, and within a short period of time upon his escape, obviously, a relatively short period, he once, again, returned

to the same life-style and possession of a firearm, which is cause for the court's upward variance.

R. 26 at 25. No one—not Hatcher, not the majority—contests the propriety of the considerations mentioned in this statement. And the record provides no reason to believe the district court's decision turned on anything else.

Hoping to lower his sentence, Hatcher targets two procedural errors in his sentencing. Because he did not air these grievances before the district court, I share the court's assumption that plain-error review applies. Neither claim meets this steep and imposing standard.

*Unfair surprise*? Hatcher initially complains that he was unfairly prejudiced by the prosecution's introduction of evidence that shell casings from his firearm were found at an uncharged shooting three days prior. But a court's use of information during sentencing does not make a sentence procedurally unreasonable unless that information is not "reasonably foreseeable," depriving the defendant of the ability to respond meaningfully. *United States v. Coppenger*, 775 F.3d 799, 804 (6th Cir. 2015). That does not describe this case. As Hatcher admits, the government disclosed all of its evidence about the shell casings and the shooting "as part of discovery." Appellant Br. 20. Hatcher had ample reason to see the relevance of the information, as it connected a serious crime to the same weapon that prompted his possession charge.

Making matters more difficult for Hatcher, it was he, not the government, who steered the sentencing hearing toward a discussion of the shell casings. The prosecution did not mention this evidence until Hatcher argued in mitigation that he carried the weapon only for protection. In response, the government stated that it "would submit that the possession of the firearm was not solely for protection," using the uncharged shooting as evidence that Hatcher possessed a gun recently used in criminal activity. R. 26 at 11–12. Hatcher had every reason to know that, by arguing he possessed the gun for self-defense, this evidence could surface.

Hatcher has no good answer. He complains that this information did not appear in his presentence report. But the Criminal Rules do not impose a "categorical requirement of prior

notice of the court's intent to vary based on information not contained in the presentence report." *Coppenger*, 775 F.3d at 804 (emphasis removed).  He offers no authority to the contrary.

Hatcher adds that the government violated a district court rule that requires parties to file with the Court "any information the parties intend to rely upon at the time of sentencing" no later than one week before sentencing.  N.D. Ohio Local Crim. R. 32.2(c).  It's hard to say whether the government "rel[ied]" upon this information within the meaning of the Rule, as it raised the incident to rebut Hatcher's contention that he carried a gun only for self-defense.  The rule at any rate binds the parties, not the district court, and thus offers no ground for challenging a sentence.

Tacking in another direction, Hatcher says he would have handled the sentencing hearing differently had he known that evidence of the casings would be introduced.  He could have, he says, asked for a formal evidentiary hearing, requested additional testing of the bullets, or interviewed those at the scene of the other shooting.  But if so, why didn't he request leave to take these steps when given the chance during his hearing?  And why didn't he investigate these options after the government revealed this evidence of this incident during discovery?  The problem for Hatcher is that the government revealed the information in discovery, and he had serial opportunities to do something about it.  No less significantly, he has made no effort to show how taking these steps would have improved his lot at sentencing.

No published case counsels a different outcome.  In *United States v. Fleming*, the district court gave a defendant (charged with cocaine-related offenses) an article about opioid overdoses on the day of the hearing and set the defendant's sentence on that basis.  894 F.3d 764, 766–67 (6th Cir. 2018).  But in this case, the government apprised Hatcher of material evidence that he had every reason to believe might come into play, particularly if he claimed that he carried the gun only for self-defense.  *United States v. Coppenger* is no more helpful.  775 F.3d at 804–06.  That trial judge relied extensively on facts found in the presentence reports of other defendants, and the information contained in them was not the sort of "garden variety consideration" that defense counsel could have anticipated.  *Id.*  Not so with this trial judge.

*Uncharged conduct*?  Hatcher submits that the district court erred for a different reason in relying on the shooting three days earlier—that it used uncharged conduct against him.  But trial

judges may consider a wide range of conduct in deciding how to sentence someone, so long as they find all necessary facts by a preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 156–57 (1997). Information related to the severity and extent of a defendant's prior conduct qualifies as relevant. *See Pepper v. United States*, 562 U.S. 476, 489 (2011). In this case, the district court had a legitimate basis to consider the uncharged shooting. The use of Hatcher's gun in the shooting three days earlier raised several possibilities, none flattering. Hatcher might have participated in the shooting, prompting the target of that shooting (or a compatriot) to retaliate three days later. He might have lent the gun to someone who participated in the shooting. He might have negligently permitted the gun to fall into the wrong hands. Or he might have purchased the gun during the three days between the shooting and his arrest, in which case he likely bought it from a violent criminal or someone closely connected to a violent criminal. Any of these possibilities raised legitimate sentencing considerations.

Hatcher focuses on the first possibility, maintaining that the court could not show by a preponderance of the evidence that he participated in the shooting. But that is not what the court did. It acknowledged that it could not "prove definitively that he is the one that used that firearm." R. 26 at 19. It relied instead on its conclusion that *someone* had used the gun in the shooting three days earlier. All that indicates is that one of the possibilities discussed above occurred, suggesting that Hatcher's possession created more danger for the community than a guidelines sentence would indicate. There is a difference between illegal possession of some guns (say one just used to shoot someone) and others (say one placed on a mantel), and a trial judge may account for that history.

But what about the part of the hearing, Hatcher counters, in which the district court said he would serve a "very lengthy time" because of the "circumstances" of his offense, adding that "the gun, whether it's by him or someone else, [someone is] certainly willing to use it"? R. 26 at 18. Yes, the judge said "by him," which Hatcher emphasizes. But he brushes past the court's reference to "or someone else." *Id.* The statement does not target Hatcher alone.

The same goes for another passage Hatcher invokes, in which the court observed that it could not "prove definitively that he is the one that used the firearm to shoot other individuals or discharge it, but three days earlier, that same handgun had been used and discharged . . . [s]o we

know that." *Id.* at 19.  This language, too, speaks only of the public risk that Hatcher's possession of the gun posed, not that he pulled the trigger.

A third comment flagged by Hatcher fares no better.  In it, the court criticizes the fact that Hatcher "returned to the old neighborhood" and either "continued to use a firearm or have a firearm on or about his person." *Id.* at 21.  The "or" makes all the difference.  Either Hatcher possessed and used the weapon, or he possessed the weapon without using it.  One or the other must be true.

That leaves one last comment, in which the court said that after Hatcher's escape he "almost immediately [got] involved again in violent conduct either on his own behalf or in interaction with others resulting in his own injury." *Id.* at 22.  It pays to know that this statement came in response to an exchange with Hatcher's defense counsel about why his client fled.  Read in context, the "violent conduct . . . in interaction with others" most naturally refers to the shooting that put Hatcher in the hospital, not to the shooting that occurred three days prior. *Id.* No plain error occurred.