NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0467n.06

Case No. 22-3232

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 09, 2023
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| D'ANDRE LATRELL HART, | ) | OHIO |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. When police searched D'Andre Hart's home, they found thousands of dollars in cash, an assortment of drugs, drug-handling equipment, and a stolen Glock. Based on that evidence, the United States brought drug charges against him. After Hart pled guilty, the sentencing court applied an upward variance. Hart argues that the variance made his sentence procedurally and substantively unreasonable. It didn't, so we affirm.

I.

In August 2020, a Cleveland police informant twice bought crack cocaine from Hart. After those buys, police secured a warrant and searched Hart's house. They found oxycodone, cocaine, and a funnel with drug residue on it. They also found thousands of dollars stashed in a child's bedroom. Police arrested Hart, and Cuyahoga County charged him with multiple drug-trafficking offenses. Hart went free on bond pending trial.

Undeterred, Hart continued dealing drugs. Between September 2020 and March 2021—while his state charges were pending—Hart sold an informant crack cocaine seven more times. So Cleveland police obtained and executed another search warrant, this time for Hart's new address. Three of Hart's young children were present when police arrived. In the garage, police found drugs (including fentanyl), thousands of dollars in cash, and a stolen Glock. They found more drugs and vinyl gloves in Hart's car.

Based on evidence from the two searches, a federal grand jury indicted Hart for possessing drugs with the intent to distribute them. Hart pled guilty. At sentencing, the court asked Hart who his customers were. "Addicts," Hart responded, not "other dealers." R. 41, Pg. ID 256. The court didn't believe him because, in separate cases, it had heard evidence that Hart *was* selling to other dealers. This mattered, the court explained, because selling to dealers is more serious and could lead to a "much, much longer" sentence. R. 38, Pg. ID 203. But because the court couldn't consider evidence beyond Hart's case, it asked whether the government would introduce that evidence. The government declined.

The rest of the hearing proceeded uneventfully. The court indicated it might apply an upward variance based on various aggravating circumstances that the Sentencing Guidelines didn't account for. 18 U.S.C. § 3553(b)(1). It set a future date for the parties to respond to the potential variance.

When sentencing continued, the court again discussed introducing evidence from other cases. After the government again declined to introduce that evidence, the court acknowledged that it was limited to "the facts in front of [it]" and put all extraneous information "aside." R. 38, Pg. ID 205. Hart could "[r]est assured" that there was "more than enough" in his Presentence Report ("PSR") to "fashion an appropriate sentence." *Id.* The court also declined the

government's request to apply an upward departure based on the inadequacy of Hart's criminal history. *See* U.S.S.G. § 4A1.3.

The court ultimately imposed a two-level upward variance based on several aggravating circumstances under 18 U.S.C. § 3553(a). *See* U.S.S.G. § 1B1.1 cmt. background. That variance increased Hart's Guidelines range from 60–71 months' imprisonment to 70–87 months. The court sentenced Hart to 87 months, reiterating that it based the sentence solely on the facts before it and didn't consider any evidence outside the record. In fact, the court stated that if it *had* considered extraneous information, it would have imposed a higher sentence or denied Hart's acceptance of responsibility—an acceptance that the court explicitly considered revoking, but ultimately did not. At the conclusion of the hearing, Hart objected to the variance but didn't identify any specific errors. He now appeals.

II.

We review a district court's sentence for reasonableness. *See United States v. Booker*, 543 U.S. 220, 260–62 (2005). Reasonableness has a process-based procedural component and a length-based substantive component. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Rayyan*, 885 F.3d 436, 440, 442 (6th Cir. 2018). Hart argues that his sentence was both procedurally and substantively unreasonable. It was neither.

A.

Hart first challenges his sentence's procedural reasonableness. He argues that the district court improperly relied on information outside his PSR—namely, that he was selling to dealers—when it sentenced him. Because he lodged only a general objection to his sentence before the district court, we review this challenge for plain error. *United States v. Hatcher*, 947 F.3d 383, 389 (6th Cir. 2020).

A court commits procedural error if it relies on erroneous or irrelevant information when imposing a sentence. *See United States v. Aguilar-Calvo*, 945 F.3d 464, 466 (6th Cir. 2019). No such reliance occurred here.

How do we know? For starters, the district court said so; it stated that it sentenced Hart based strictly on his PSR. It didn't consider "other conduct" from "another case." R. 38, Pg. ID 216. It assured Hart that there was "more than enough" material in his PSR to "fashion an appropriate sentence." *Id.* at 205. And as we explain below, it methodically applied the § 3553(a) factors to show the variance was necessary. In sum, the district court "explicitly disclaimed reliance" on any extraneous information, and nothing in the sentencing transcript undermines that disclaimer. *Aguilar-Calvo*, 945 F.3d at 469. Hart's sentence was procedurally reasonable, and no error—plain or otherwise—occurred.

Hart resists this conclusion, pointing to the district court's statement that he was "involved in drug trafficking at a relatively high level." R. 38, Pg. ID 210. That assertion, in Hart's view, could only have come from extraneous knowledge that Hart was selling to dealers. But one need not know Hart's clientele to know he was running a major operation. As the court noted, police seized tens of thousands of dollars, several types of drugs, a stolen gun, vinyl gloves, and a funnel. That is evidence of a drug distribution business beyond mere street dealing. *Cf. United States v. Ham*, 628 F.3d 801, 808 (6th Cir. 2011) (explaining that a large quantity of drugs, guns, and cash are evidence of drug trafficking). Hart, moreover, continued trafficking dangerous drugs while under indictment for that very crime. That is not the stuff of a low-level peddler, and the district court didn't err in concluding as much.

B.

Hart next argues that his sentence was substantively unreasonable. Although we review that challenge under the slightly more forgiving abuse-of-discretion standard, it fares no better. *United States v. Peppel*, 707 F.3d 627, 633–34 (6th Cir. 2013) (limiting plain-error review on substantive-reasonableness challenges to "situations in which the failure to raise arguments below is flagrant"). The district court neither "base[d] the sentence on impermissible factors" nor gave "an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

Indeed, the district court marched through the relevant § 3553(a) factors and explained why a variance was necessary. *See Rita v. United States*, 551 U.S. 338, 344 (2007) (explaining that "application of the sentencing factors set forth in 18 U.S.C. § 3553(a)" may warrant a variance based on considerations "independent of the Guidelines"); *United States v. Husein*, 478 F.3d 318, 329–31 (6th Cir. 2007). It began with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). As the court explained, Hart continued selling drugs even after Cuyahoga County indicted him on drug charges. Because the Guidelines don't address such immediate recidivism, the court deemed an upward variance necessary to meet the increased need for deterrence. *Id.* § 3553(a)(2)(B). Hart, moreover, possessed particularly harmful drugs, stored cash in his child's bedroom, and kept the tools of his illicit trade in the same house as his children. The Guidelines address neither the unique danger of opioids nor Hart's child endangerment. Finally, the court cited Hart's stolen gun, explaining that the Guidelines don't cover use of a stolen gun in a drug offense, necessitating an upward variance.

The court then considered the other relevant § 3553(a) factors. It considered Hart's criminal history and individual characteristics—specifically his prior trafficking and misdemeanor

convictions. *See id.* § 3553(a)(1). Next, the court ensured that any sentencing disparity between Hart and similar offenders was appropriate. *See id.* § 3553(a)(2), (6). Lastly, it noted the unique public danger of fentanyl, emphasizing both the seriousness of the offense and the need to protect the public from Hart's future crimes. *See id.* § 3553(a)(2)(A), (C). Nowhere in this discussion did the court mention that Hart was selling to dealers. Nor did it need to, as Hart's record alone supplied enough material to justify the variance. In sum, the district court carefully set forth the reasons for its sentence, linking facts from the PSR directly to the relevant § 3553(a) factors to explain why the variance was necessary. And it repeatedly assured Hart that it was only considering properly admitted information. The variance was thus substantively reasonable.

In response, Hart argues that the court abused its discretion by relying on two specific factors: the stolen Glock and the unique danger of fentanyl. He also argues that he didn't have a chance to respond to the factors on which the court based its variance. He's wrong on all three points.

Start with the gun. It's true that when a defendant uses a stolen gun in a firearm offense, the Guidelines suggest a two-level enhancement. *See* U.S.S.G. § 2K2.1(b)(4). The drug-offense Guidelines suggest no such enhancement. *See* U.S.S.G. § 2D1.1(b). That omission, Hart argues, indicates that the Sentencing Commission didn't want courts to consider whether a gun was stolen in non-firearm offenses. But that's not how variances work. The point of a variance is to account for aggravating (or mitigating) circumstances the Guidelines don't recognize. *See* 18 U.S.C. § 3553(b)(1); *see also Kimbrough v. United States*, 552 U.S. 85, 101–02 (2007). Because the Guidelines don't provide a stolen-gun enhancement for drug offenses, the district court was free to consider that fact in a variance.

Next, the fentanyl. Hart is correct that the Guidelines account for a drug's dangerousness by applying the same offense level to lower masses of some drugs and higher masses of others. *See* U.S.S.G. § 2D1.1(c). But the court considered more than fentanyl's danger in the abstract; it highlighted the drug's disastrous effect on Cuyahoga County. And a district court does not abuse its discretion in varying upward based on "the effect of the opioid epidemic in Ohio." *United States v. Robinson*, 892 F.3d 209, 215 (6th Cir. 2018). The court thus appropriately considered the tragedy of fentanyl in enhancing Hart's sentence.

Finally, Hart had a full opportunity to respond to the variance. Not only did the court expressly call for objections, but it continued the sentencing hearing to allow Hart to respond. *See United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). And Hart took the opportunity, making several arguments why the variance shouldn't apply. His unfair-surprise argument thus rings hollow.

We affirm.