NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0514n.06

No. 22-4039

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Dec 11, 2023
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| DONTE J. PRINCE, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

_____

Before: WHITE, NALBANDIAN, and MURPHY, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Donte J. Prince appeals his forty-six-month sentence entered after he pleaded guilty to one count of distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), pursuant to a plea agreement. Prince argues that his sentence is procedurally unreasonable because the district court did not give him an adequate opportunity to respond to an upward variance based on misconduct in detention while awaiting sentencing, and is substantively unreasonable because it is excessive. We AFFIRM.

**I.**

In February 2021, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began investigating Prince and his brother for suspected violations of federal drug and firearm laws. Later that month, a confidential informant told an ATF agent that he had purchased contraband from the brothers. At the direction of the agent, the informant contacted the brothers asking if they had methamphetamine for sale. Prince said yes but that his source was currently in Canton, Ohio.

On February 25, the informant asked Prince if he had $80 gram cut fentanyl; Prince answered in the affirmative, and the two planned an exchange. They met at a residence on Georgia Avenue in Akron, Ohio, and Prince sold the informant 8.3 grams of fentanyl. Prince was indicted on one count of distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).

Prince and the government entered into a proposed plea agreement on August 11, 2022, stipulating that the base offense level under the U.S. Sentencing Guidelines Manual was sixteen and that the government would recommend a three-level reduction for acceptance of responsibility. Prince further acknowledged that the district court would "decide the advisory guideline range under the Sentencing Guidelines, whether there is any basis to depart from that range or impose a sentence outside the advisory guideline range, and what sentence to impose," R. 17, PID 50, and that the court could "vary from the advisory guideline range," *id.* at PID 49.

The district court held a change-of-plea hearing on August 24, 2022, and approved the plea agreement. After reviewing the agreement, questioning Prince, and accepting his guilty plea, the court offered "some closing remarks." R. 38, PID 233. The court's message was "stay out of trouble": "No fights, no contraband, cell phones, drugs, other problems, disrespecting the correctional officers, things like that. If any of those things happen, I'll get a report[,] and I can assure you your sentence will be longer." *Id.*

On October 17, 2022, the district court received notice of the filing of a Marshals Service report on an incident that occurred while Prince was in custody awaiting sentencing. The report stated that, three days earlier, Prince and another detainee had a physical alteration. The dispute began verbally, and Prince "dropped an item . . . later discovered to be a homemade weapon approximately 7 inches in length, made of metal sharpened to a point with a handle fixed to the

other end." R. 19, PID 60. Prince then shoved and punched the other detainee, who held his hands in a defensive posture but did not strike back.

Prince was sentenced on December 1, 2022. Consistent with the plea agreement, the district court calculated Prince's sentencing guidelines range using a base offense level of sixteen and applied a three-level acceptance-of-responsibility reduction, yielding a total offense level of thirteen. The court determined that Prince's "lengthy criminal history" resulted in criminal history category VI, and neither the government nor Prince objected. R. 32, PID 181–82.

The court then "g[a]ve the parties notice of a possible upward variance." *Id.* at PID 182. It cited Prince's altercation while in detention and read into the record the details that the Marshals provided in the incident report, calling Prince's conduct "deeply troubling" and "an indication he's still a danger to the community . . . , a serious danger." *Id.* at PID 182–83. The court said it was "contemplating" a variance of "two levels based on the nature of this violent conduct" and let Prince's counsel present "any argument . . . regarding the matter" for the court's consideration. *Id.* at PID 183.

Prince's counsel conceded that the conduct discussed in the Marshals' report "obviously occurred," *id.* at PID 185, and Prince did "not contest[] the citation report," *id.* at PID 186, but argued that no variance was warranted because the incident was the only one during Prince's time in federal custody, misconduct like this incident "happen[s] on a spectrum," and "we all got to be realistic about the environment" within detention facilities, *id.* at PID 185. Counsel further noted that Prince did "not use[]" the "shank" found at the scene and that a within-guidelines sentence of thirty-three to forty-one months would account adequately for the incident. *Id.* at PID 185–86, 188, 190. The court probed counsel on the seriousness of the altercation, Prince's responsiveness to past periods of incarceration and community control, and the nature and frequency of his prior

3

criminal convictions. Eventually, counsel asked that the court "consider possibly only a one-level upward variance." *Id.* at 193. Prince spoke directly to the court, "apologiz[ing]" for his misconduct, noting that his detention facility was "dangerous," and stating that he was "put . . . in the hole for 30 days" as a result of the altercation. *Id.*

The government also responded to the court's contemplated variance. It said that it was "asking for a high guideline sentence," given Prince's offense and criminal history, and "acknowledge[d] the court's decision . . . to vary upward and . . . st[oo]d by the plea agreement." *Id.* at PID 196.

After hearing arguments from the parties, the district court discussed, among other things, Prince's offense, including his arrangement to sell fentanyl and other drugs to the confidential informant and his one juvenile and thirteen adult convictions for other offenses, "ranging from driving under suspension" of his license "to aggravated trafficking in drugs," as well as domestic violence and intimidation of a witness. *Id.* at PID 200–01. The court further noted Prince's age, employment, education, physical health, and previous diagnoses of "depression, anxiety, bipolar disorder, posttraumatic stress disorder, [and] schizophrenia." *Id.* Although there was no evidence that "all of those various diagnoses [were] currently in place," the court "assume[d] that he ha[d] some mental health problems or issues for purposes of sentencing." *Id.* at PID 201. And the court noted both a letter from Prince's mother and typical sentences for offenders in Prince's guidelines range.

The court ultimately imposed a one-level upward variance, putting Prince's sentencing range at thirty-seven to forty-six months, and sentenced him to forty-six months in prison—five months above the upper bound of the applicable guidelines range without the variance. The court referred to its earlier discussion of "how serious" it considered Prince's conduct while in detention,

his "multiple opportunities to change his behavior" after prior contacts with the legal system, the failure of an earlier custodial sentence to "deter him from committing [further] crime," and the "danger to the community" that his prior "[f]leeing from law enforcement, possession of guns, [and] selling drugs" posed. *Id.* at PID 202.

Finally, after stating Prince's term of imprisonment and other terms of sentence, the district court asked whether, under this court's decision in *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), the parties had any "corrections [or] arguments that have not been previously raised" that the court could "address." R. 32, PID 205–06. Prince's counsel responded, "Nothing." *Id.* at PID 206.

**II.**

"On appeal, district court sentencing determinations are reviewed for reasonableness. The reasonableness inquiry has two components: procedural and substantive." *United States v. Gates*, 48 F.4th 463, 468–69 (6th Cir. 2022) (citation omitted). A claim of procedural unreasonableness "goes 'more to the *process* by which the district court arrived at the given sentence than to the substantive aspect of the sentence (i.e., the relationship between the length of the sentence and the strength of the reasoning [concerning the relevant factors for sentencing]).'" *United States v. Cabrera*, 811 F.3d 801, 808–09 (6th Cir. 2016) (citation omitted). "The court must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). The court must also "giv[e] [the defendant] notice and fair opportunity to respond" to information on which the court relies to impose any sentencing variance. *United States v. Coppenger*, 775 F.3d 799, 803–04 (6th Cir. 2015).

We generally review claims concerning procedural reasonableness for an abuse of discretion, but for unpreserved claims, we review for plain error. *See United States v. Pennington*, 78 F.4th 955, 962 (6th Cir. 2023). Prince did not object at sentencing to the district court's consideration of his altercation with another detainee or argue that the court gave insufficient notice of its intent to vary, so plain-error review applies. To prevail under this standard, a defendant "must show an error that was obvious or clear, that affected [the defendant's] substantial rights and that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (cleaned up).

"A claim that a sentence is substantively unreasonable is a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *Rayyan*, 885 F.3d at 442. The issue is whether "the court placed too much weight on some . . . factors and too little on others in sentencing the individual." *Id.* We review substantive reasonableness arguments under an abuse-of-discretion standard. *See United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022).

## III.

### A.

Prince argues that the district court's consideration of his altercation while detained was procedurally unreasonable. He says that he "was unfairly ambushed," Appellant Br. 8, and that he "and his counsel were at an extreme disadvantage when forced to defend conduct unrelated to the charged offense without an opportunity to confer or the time to obtain exculpatory evidence," *id.* at 9. We do not agree.

"A sentence may be procedurally unreasonable if 'the facts or issues on which the district court relied to impose a variance came as a surprise and [the defendant's] presentation to the court was prejudiced by the surprise.'" *United States v. Zabel*, 35 F.4th 493, 506 (6th Cir. 2022)

(alteration in original) (quoting *Coppenger*, 775 F.3d at 804). "We have concluded that a defendant was surprised by such 'facts or issues,' for example, when a sentencing court relied on information that was 'neither signaled in the presentence report nor otherwise reasonably foreseeable.'" *United States v. Hatcher*, 947 F.3d 383, 391 (6th Cir. 2020) (quoting *Coppenger*, 775 F.3d at 804). "A defendant may be prejudiced by such surprise when [the defendant or] counsel do not have 'a meaningful opportunity to contest the veracity or relevance of the information' relied upon by the district court." *Id.* (quoting *United States v. Fleming*, 894 F.3d 764, 769 (6th Cir. 2018)).

Here, the district court's reliance on information concerning Prince's altercation with another detainee was not a surprise. At Prince's change-of-plea hearing, the court warned Prince against any "fights, . . . contraband, cell phones, drugs, other problems, disrespecting the correctional officers, things like that" while he remained in detention awaiting sentencing and said that, "[i]f any of those things happen, [the court will] get a report[,] and . . . [his] sentence will be longer." R. 38, PID 233. The Marshals' report on this incident was entered on the docket on October 17, 2022, over six weeks before Prince's sentencing hearing. Thus, Prince and his counsel were on "notice that . . . information" concerning his altercation "would be relied upon at sentencing," and they reasonably "could have 'anticipate[d] the weight the court ultimately assigned to th[is] consideration' at sentencing." *Hatcher*, 947 F.3d at 392 (second and third alterations in original) (quoting *Coppenger*, 775 F.3d at 805). Further, the court gave counsel and Prince an opportunity to address the incident and whether it justified a variance. In short, Prince was not ambushed or surprised.

7

**B.**

Prince also claims that his sentence is substantively unreasonable. He argues that the "single instance of purported institutional misconduct" was "insufficient to support the variance," calling his offense "a mine-run case" and "well within the heartland of similar cases" such that his applicable guidelines range "and the disciplinary action at the jail . . . more than adequately punished [him] for both the fentanyl sale and the shank" and a variance was unwarranted. Appellant Br. 9–10. He further challenges the district court's application of the sentencing factors under 18 U.S.C. § 3553(a) for focusing too much on his criminal history and not enough on "the actual offense conduct and his mental illness" and for failing to "meaningful[ly] compar[e]" his offenses "to those committed by other Category VI offenders." *Id.* at 10. Here, too, we disagree.

"In our substantive-reasonableness review, we must 'take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). "Although a sentence that falls within the Guidelines range warrants a presumption of reasonableness in this circuit, there is no presumption against a sentence that falls outside of this range." *United States v. Herrera-Zuniga*, 571 F.3d 568, 590 (6th Cir. 2009). Still, "[i]f the sentencing [court] elects 'an outside-Guidelines sentence . . . [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Tristan-Madrigal*, 601 F.3d at 633 (quoting *Gall*, 552 U.S. at 50). "The greater the variance, the more compelling the justification must be." *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020). The court must "explain[] how the present case is different from the typical or mine-run case that occupies the 'heartland to which the [Sentencing] Commission intends individual Guidelines to apply,'" and "we give closer review to a variance in a mine-run

case." *Id.* (internal quotation marks omitted) (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007))). "A mine-run case is . . . a normal case under the governing Guidelines range, which is calculated to incorporate the crime at issue, the offense level, and the criminal history category based on prior offenses." *Id.*

The district court properly considered Prince's altercation in imposing a sentencing variance. Such "[p]ost-conviction conduct is a proper [§] 3553(a) factor[] and has been held by this [c]ourt to be a proper basis for an upward variance." *United States v. Sharrak*, 527 F. App'x 383, 389 (6th Cir. 2013); *see also United States v. Peña*, 963 F.3d 1016, 1025–26, 1028–30 (10th Cir. 2020) (upholding the substantive reasonableness of a sentence, including an upward variance, based partly on the defendant's post-conviction weapons violations); *cf. United States v. Archambault*, 62 F.3d 995, 1000–02 (7th Cir. 1995) (upholding upward departure based on the defendant's continued criminal activity while awaiting trial and sentencing). And although Prince's offense of conviction may be a mine-run example of fentanyl distribution, his altercation was not related to that offense, occurred after the offense and while he awaited sentencing, and was not otherwise accounted for in calculating the applicable guidelines range. *See Sharrak*, 527 F. App'x at 389; *cf. United States v. Ruiz*, 403 F. App'x 48, 54–55 (6th Cir. 2010) (noting "this circuit's prior holdings that an upward departure, let alone a variance, is 'expressly encouraged' when the Guidelines do not adequately account for past criminal conduct" (citation omitted)); *Tristan-Madrigal*, 601 F.3d at 636 ("[T]he district court was entitled to consider Tristan-Madrigal's criminal history in its decision to vary above the recommended Guidelines range.").

The degree of Prince's variance, moreover, was reasonable and adequately explained on the record. The variance was five months above the upper bound of the otherwise applicable guidelines range, and the district court reasonably concluded that such a variance was appropriate

considering the violent nature of Prince's conduct, his possession of a weapon during the incident, and his failure to heed the court's warning at the change-of-plea hearing. *See United States v. Ragland*, 226 F. App'x 507, 511 (6th Cir. 2007) (affirming variance several years above guidelines range because the district court could reasonably conclude based on the defendant's post-conviction assault of his attorney, coupled with his "pattern of violent conduct," that he "was likely to commit violent crimes in the future and that the public needed protection from him").

Finally, the district court reasonably evaluated the sentencing factors under § 3553(a). Contrary to Prince's assertion, the court considered the specific circumstances of his fentanyl offense, his mental-health issues, and the sentences of other offenders in imposing a sentence. Thus, Prince's "argument ultimately boils down to an assertion that the district court should have balanced the § 3553(a) factors differently." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). That "is 'simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence.'" *Id.* (quoting *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)). Accordingly, the district court reasonably imposed an upward variance here.

## IV.

Prince's sentence fails for neither procedural nor substantive unreasonableness. For the reasons stated, we AFFIRM.