RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0198p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                               *Plaintiff-Appellee*,

      *v*.

LIVIU-SORIN NEDELCU,

                               *Defendant-Appellant*.

> No. 20-6328

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:18-cr-00081-3—Robert E. Wier, District Judge.

Argued: May 10, 2022

Decided and Filed: August 22, 2022

Before: CLAY, GRIFFIN, and WHITE, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Thomas C. Lyons, LAW OFFICES OF THOMAS C. LYONS, Lexington, Kentucky, for Appellant. Sonja M. Ralston, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Thomas C. Lyons, THOMAS C. LYONS LAW OFFICES, Lexington, Kentucky, for Appellant. Sonja M. Ralston, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Charles P. Wisdom, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

─────────────────

## OPINION

─────────────────

GRIFFIN, Circuit Judge.

Defendant Liviu-Sorin Nedelcu pleaded guilty to RICO conspiracy. At sentencing, the district court increased his offense level based on the section of the Sentencing Guidelines that

applies to money-laundering convictions. Nedelcu contends that this was an erroneous application because he was not convicted of money laundering. We disagree. Because the factual basis for Nedelcu's plea agreement specifically established that he committed money laundering as a predicate for his RICO conviction, the Guidelines compelled the district court to sentence him "as if" he had been convicted of money laundering. Accordingly, we affirm the judgment of the district court.

I.

In 2018, a federal grand jury in the Eastern District of Kentucky indicted over a dozen members of the Romania-based "Alexandria Online Auction Fraud Network." This organization advertised fictitious goods for sale on websites such as eBay, Craigslist, and Amazon. When consumers tried to buy these goods, the fraudsters instructed them to pay in various hard-to-trace forms like gift cards or prepaid debit cards. These payments were then converted into Bitcoin through intermediaries, and ultimately redeemed for cash at corrupt currency exchanges in Eastern Europe. The would-be customers never received the promised goods.

Nedelcu participated in this scheme. The grand jury charged him with conspiracy to violate RICO, in violation of 18 U.S.C § 1962(d); conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Romania extradited Nedelcu to the United States to face these charges.

He soon entered into a plea agreement under which he pleaded guilty to RICO conspiracy in exchange for the dismissal of his other charges. To provide a factual basis for his guilty plea, Nedelcu admitted that the government could prove the following facts beyond a reasonable doubt:

> (a) Liviu-Sorin Nedelcu is a Romanian national from Brag[a]di[r]u, Romania, who lived for several years in Alexandria, Romania. He used the following online monikers: idll00, idl6666, idl16, foiaol2015, and rapitoru007. He was associated with the Alexandria Online Auction Fraud ("AOAF") Network, an enterprise as defined by 18 U.S.C. § 1961(4).
>
> (b) On or about May 2, 2015, Nedelcu, through online chat, communicated with an individual about processing gift cards. This individual later became a Confidential Source ("CS") for the United States.

(c) Working in conjunction with others in the enterprise, Nedelcu used the Internet to post advertisements for goods to auction websites, including eBay, and sales websites, including Craigslist and Amazon. To maintain an appearance of legitimacy, Nedelcu created fictitious entities through which he purported to sell vehicles, such as Aol Autos. When Nedelcu had convinced victims to purchase the falsely advertised goods, he sent the victims invoices for payment that appeared to be from legitimate sellers, including eBay Motors through eBay Buyer Protection. These communications often contained trademarks of eBay.

(d) Once Nedelcu convinced victims to purchase and provide payment for a falsely advertised item, Nedelcu reached out to the CS, and others in the United States who provided money laundering services similar to the CS, to convert the victim payment to bitcoin. Nedelcu knew the funds he transferred to the CS constituted the proceeds of unlawful activity.

(e) In accordance with Nedelcu's instructions, the CS would launder the proceeds of fraud by exchanging fraud proceeds into bitcoin. Specifically, the CS, located in the United States, sent Nedelcu, located in Romania, bitcoin in exchange for fraud proceeds to bitcoin addresses belonging to Nedelcu. Nedelcu engaged in this scheme from at least February 12, 2015 until at least December of 2017. This scheme concealed the source, nature, ownership, and control of the fraud proceeds. Nedelcu knew of the scheme's unlawful purposes and voluntarily joined it.

(f) Nedelcu worked with other European-based members of the AOAF Network, including Adrian Mitan and others in furtherance of the scheme.

(g) Prior to becoming a CS, Nedelcu and the CS laundered approximately $5,600.

Before sentencing, the probation department prepared a pre-sentence report. The probation officer calculated Nedelcu's offense level by examining a cascading series of cross-references, beginning first with the section that applies to RICO conspiracy convictions, U.S.S.G. § 2E1.1. This section provides that the base offense level is 19 or "the offense level applicable to the underlying racketeering activity," whichever is greater. To see if this second option was greater than an offense level of 19, the officer determined that Nedelcu's underlying racketeering activity was money laundering and thus turned to § 2S1.1. That section instructs courts to apply the offense level "for the underlying offense from which the laundered funds were derived" if the defendant committed the underlying offense and "the offense level for that offense can be determined." § 2S1.1(a)(1). So the probation officer turned to the fraud guideline, § 2B1.1, and ultimately concluded that Nedelcu's base level offense was 27 given the

amount of loss, number of victims, and presence of international conduct. *See* § 2B1.1(a)(1), § 2B1.1(b)(1), (10)(B).

The officer returned to the money-laundering section to determine if any specific-offense characteristics required further increases. He concluded two money-laundering provisions applied. The first, § 2S1.1(b)(2)(B), increases a defendant's offense level by two "[i]f the defendant was convicted under 18 U.S.C. § 1956." The second, § 2S1.1(b)(3), provides that, if § 2S1.1(b)(2)(B) applies and the offense involved "sophisticated laundering" a further two-level increase is necessary. Applying these two provisions, the probation officer added four levels to Nedelcu's base level, resulting in an adjusted offense level of 31. Because this number is greater than 19, it applied to Nedelcu's sentencing under the RICO guideline. § 2E1.1(a). A three-level reduction for acceptance of responsibility resulted in a final offense level of 28, which combined with Nedelcu's criminal history category of I to make a Guidelines Range of 78 to 97 months' imprisonment.

At sentencing, Nedelcu objected to the application of four levels under the money-laundering section. He argued that these provisions required an "actual conviction" under 18 U.S.C. § 1956. Because he was convicted only under 18 U.S.C § 1962(d), he contended that his offense level should be 24, which would produce a range of 51 to 63 months' imprisonment. The district court rejected Nedelcu's argument, applied the money-laundering enhancements, and imposed a within-Guidelines sentence of 82 months' imprisonment. Nedelcu then filed this timely appeal.

II.

Nedelcu challenges only the district court's decision to apply the money-laundering enhancements. The parties agree that, in this case, the application of § 2S1.1(b)(3) rises and falls with the application of § 2S1.1(b)(2)(B), so we focus on § 2S1.1(b)(2)(B). We review de novo both the district court's interpretation of the Guidelines and its application of the Guidelines to the facts. *United States v. Sands*, 948 F.3d 709, 712–13 (6th Cir. 2020).

A.

As outlined above, Nedelcu's offense-level calculation involves a series of cross-references: the RICO section points to the money-laundering section, which points to the fraud section. Nedelcu agrees with most of this calculation. He objects only to the district court's decision to increase his offense level under § 2S1.1(b). This section provides in relevant part that "[i]f the defendant was convicted under 18 U.S.C. §1956, increase by 2 levels." U.S.S.G. § 2S1.1(b)(2)(B). Section 1956 criminalizes money laundering. *See* 18 U.S.C. § 1956. Nedelcu argues that § 2S1.1(b)(2)(B) cannot apply here because he was not convicted of money laundering under § 1956.

On its face, Nedelcu's argument appears strong. The Guidelines "should be interpreted as if they were a statute," and we must "follow the clear, unambiguous language if there is no manifestation of a contrary intent." *United States v. Oliver*, 919 F.3d 393, 400 (6th Cir. 2019) (quotation omitted). On its own, § 2S1.1(b)(2)(B) increases a defendant's offense level only "[i]f the defendant was convicted under 18 U.S.C. § 1956."

Despite this plain-at-first-glance language, another Guidelines provision shows that an actual conviction under § 1956 is not necessary in all circumstances. Section 1B1.2(c) provides that "[a] plea agreement . . . containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offenses." This provision means that a court must sentence a defendant "as if" he had been convicted of an offense if his plea agreement specifically establishes that he committed that offense. No formal conviction for the additional offense is required to apply § 1B1.2(c).

Thus, the dispositive question here is whether the factual stipulations in Nedelcu's plea agreement specifically establish that he committed money-laundering offenses prohibited by 18 U.S.C. § 1956. If he did, he "shall be treated as if [he] had been convicted of additional counts(s) charging those offenses." U.S.S.G. § 1B1.2(c). To answer this question, we look to § 1956 and Nedelcu's plea agreement.

B.

Section 1956 criminalizes laundering money to conceal its unlawful source. 18 U.S.C. § 1956(a)(1)(B)(i). Three elements "make out a violation of this provision[:] . . . (1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) knowledge that the transaction is designed in whole or in part to disguise the source, ownership, or control of the proceeds." *United States v. Warshak*, 631 F.3d 266, 319–20 (6th Cir. 2010) (brackets, ellipses, and quotation marks omitted). The statute also criminalizes conspiring to launder money. 18 U.S.C. § 1956(h). That offense requires that the defendant "knowingly agreed with someone else to commit" money laundering. *United States v. Chavez*, 951 F.3d 349, 356 (6th Cir. 2020).

When Nedelcu pleaded guilty to RICO conspiracy, he stipulated to facts that specifically establish money-laundering offenses under § 1956(a)(1)(B)(i) and (h). His plea agreement described how he fraudulently obtained money by promising to sell nonexistent goods. He then sent this money to a third party who converted it to Bitcoin. Nedelcu specifically admitted that he "knew the funds he transferred to [the third party] constituted the proceeds of unlawful activity" and that he converted them to Bitcoin to "conceal[] the source, nature, ownership and control of the fraud proceeds." Nedelcu further admitted that he "knew of the scheme's unlawful purposes and voluntarily joined it." And he admitted that he "worked with" other members of the fraud syndicate "in furtherance of the scheme."

Nedelcu's admissions track (often word-for-word) the elements of concealment money laundering and conspiracy to commit concealment money laundering: he admitted that he conducted financial transactions using funds that were the proceeds of fraud, that he knew these funds came from an unlawful activity, and that he converted them to Bitcoin to disguise their source, ownership, or control. *See Warshak*, 631 F.3d at 319–20. The plea agreement further establishes that he knowingly conspired with other people (the Bitcoin converters and other members of the fraud syndicate) to commit this money laundering. *See Chavez*, 951 F.3d at 356. Because he stipulated to facts that specifically establish the commission of these additional offenses, § 1B1.2(c) required that, during sentencing, he be "treated as if [he] had been convicted

of additional count(s) charging" violations of § 1956.   Thus, for the purposes of § 2S1.1(b)(2)(B), Nedelcu "was convicted under 18 U.S.C. § 1956."

C.

Nedelcu raises various arguments against applying § 1B1.2(c) here.  First, he argues that, even though his plea agreement includes proof of money laundering as a predicate act for his RICO conviction, he did not stipulate to a conviction under § 1956.  In support of this argument, he points to provisions in his plea agreement where he explicitly "d[id] not agree to" the sentencing enhancements that apply to § 1956 convictions.   In Nedelcu's view, these disagreements mean that he did not stipulate to a violation of § 1956.

This argument misunderstands what it means to stipulate to additional offenses under § 1B1.2(c).  A defendant need not concede that he violated a statute; he need only admit facts that allow the court to conclude that his conduct satisfied the elements of an additional offense. *See, e.g.*, *United States v. Gutierrez-Sanchez*, 587 F.3d 904, 907–08 (9th Cir. 2009) (concluding that the defendant could be convicted of the additional offense of being illegally present in the United States because he "admitted all the elements of the . . . offense");[1] *United States v. Bernard*, 373 F.3d 339, 346 n.8 (3d Cir. 2004) (explaining in dicta that "U.S.S.G. § 1B1.2(c) applies to situations where the defendant has stipulated *to facts* that establish the commission of additional offenses[.]") (emphasis added)); *United States v. Courtney*, 362 F.3d 497, 501 (8th Cir. 2004) (explaining that the defendant's "Guidelines calculations should have proceeded as if he had been convicted of 152 additional product-tampering charges" because he "stipulated in his written plea agreement that he had diluted fifty additional doses of chemotheraphy drugs that were administered to the eight patients named in the indictment, and that he had diluted 102 doses of chemotheraphy drugs that were administered to twenty-six more patients"), *vacated on other grounds*, 543 U.S. 1098 (2005); *United States v. Shutic*, 274 F.3d 1123, 1125 (7th Cir. 2001) (stating in the court's discussion of the factual background that because the defendant

---

[1]The defendant in *Gutierrez-Sanchez* also conceded that the fact that he was "ordered by the immigration judge not to reenter the United States without requesting and obtaining permission from the Attorney General or designated successor . . . result[ed] in the increase in offense level set forth in paragraph 5 below." 587 F.3d at 907. The Ninth Circuit's opinion does not indicate what was referenced in paragraph 5 of the defendant's plea agreement.

"*stipulated to facts* that established his guilt to . . . five other offenses charged in the indictment, his plea agreement thus was treated for sentencing purposes as if he had been convicted of the additional counts as charged, pursuant to U.S.S.G. § 1B1.2(c)") (emphasis added)); *United States v. Saldana*, 12 F.3d 160, 163–64 (9th Cir. 1993) (remanding for "resentencing under § 1B1.2(c)" where "*facts stipulated in the plea agreement*" established that defendant had also satisfied the elements of food-stamp fraud) (emphasis added)); *United States v. Rodriguez*, 928 F.2d 65, 66 (2d Cir. 1991) (stating in the court's discussion of the procedural history that "[p]ursuant to a plea agreement, Rodriguez . . . *admitted to the facts of the offenses* charged in the first indictment, thereby making him subject to sentencing as if he had been convicted of an additional count charging those offenses") (emphasis added)).  Indeed, defendants often unsuccessfully challenge the existence of additional offenses under § 1B1.2(c), usually by arguing that the factual stipulations are insufficient to establish all the elements of the offense. *See, e.g.*, *Saldana*, 12 F.3d at 163–64; *United States v. Gutierrez-Sanchez*, 587 F.3d 904, 908–09 (9th Cir. 2009).  Thus, Nedelcu's disagreement with the money-laundering enhancements does not, standing alone, bar application of § 1B1.2(c).  Rather, Nedelcu's factual admissions are what matters.  And, as described above, those admissions establish violations of § 1956.

Nedelcu next argues that, if his plea agreement establishes that he committed money laundering, he should be able to avail himself of protections contained in commentary to § 1B1.2(a).  This Guideline provides that, if a plea agreement establishes "a more serious offense" than the offense of conviction, the "offense guideline section" for the stipulated offense should be used.  § 1B1.2(a).  However, "[a] factual statement or stipulation contained in a plea agreement . . . is a stipulation for the purposes of subsection (a) only if both the defendant and the government explicitly agree that the factual statement or stipulation is a stipulation for such purposes." *Id*. app. note. 1.  Because Nedelcu and the government never "explicitly agreed" that his plea's factual basis would be used to establish money laundering in violation of § 1956, he believes that the money-laundering enhancement cannot apply.

This argument is meritless.  Section 1B1.2(a) informs only the first step of an offense-level calculation: the selection of the applicable "offense guideline section." *Id*.; *see also* § 1B1.1(a)(1).  Here, Nedelcu concedes that the district court started with the correct offense

Guidelines section—the RICO section codified at § 2E1.1—because that was his count of conviction. The court then cross-referenced Nedelcu's offense level to the money-laundering Guideline by way of § 2E1.1(a)(2), a move that Nedelcu again agrees was correct. Even if Nedelcu would have had to explicitly agree to using the money-laundering guideline as his "offense guideline section," it does not matter because the district court did not do that. The court only got to that section through a cross-reference. Accordingly, his failure to explicitly agree makes no difference.

Nedelcu's final argument is that Guidelines commentary recognizes that some provisions "may expressly direct that a particular factor be applied only if the defendant was convicted of a particular statute." § 1B1.3 app. note. 7. This commentary uses § 2S1.1(b)(2)(B) as an example of the necessary express direction:

> A particular guideline (in the base offense level or in a specific offense characteristic) may expressly direct that a particular factor be applied only if the defendant was convicted of a particular statute. For example, in § 2S1.1 (Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity), subsection (b)(2)(B) applies if the defendant "was convicted under 18 U.S.C. § 1956". Unless such an express direction is included, conviction under the statute is not required.

*Id*. Nedelcu focuses on the principle that "[u]nless such an express direction is included, conviction under the statute is not required," and argues that the converse must also be true: if an express direction is included, conviction under the statute is required. But § 1B1.2(c) forecloses this argument. That Guideline's clear language, coupled with Nedelcu's factual stipulations, compelled the district court to sentence him "as if" he had been convicted under § 1956. In other words, for the purposes of the Guidelines, Nedelcu "was convicted under 18 U.S.C. § 1956," so his sentence does not run afoul of this commentary even under his interpretation of it.

The two cases cited by Nedelcu regarding Application Note 7 to § 1B1.3 do not change our conclusion. In *United States v. Rosse*, 320 F.3d 170 (2d Cir. 2003), the Second Circuit affirmed the district court's decision not to apply the money-laundering enhancements under an old version of § 2S1.1 when the defendant had been convicted of RICO based on predicate acts of money laundering. *Id.* at 173. Although that court's perfunctory analysis nominally supports

Nedelcu's argument, it did not consider § 1B1.2(c). And *United States v. Rodriguez*, 278 F.3d 486 (5th Cir. 2002), is plainly inapposite. There, the defendant had been convicted under § 1956 and the issue was how much of his money laundering would count as relevant conduct. *Id*. at 489, 493.

III.

In sum, Nedelcu's plea agreement provided a factual basis to conclude that he committed money-laundering offenses in violation of § 1956, so § 1B1.2(c) required that he be sentenced as if he had been convicted under that statute. Accordingly, §§ 2S1.1(b)(2)(B) and (3) apply.[2] We therefore affirm the judgment of the district court.

---

[2]The government also asserts that the money-laundering enhancements apply under Application Note 1 to the RICO guideline, which states that "[w]here there is more than one underlying offense, treat each underlying offense as if contained in a separate count of conviction." U.S.S.G. § 2E1.1 app. note 1. Because the district court correctly applied the enhancements under § 1B1.2(c), we need not address whether Application Note 1 to § 2E1.1 also supports application of the enhancements.