RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 22-5181

*v.*

DAVID PENNINGTON,

*Defendant-Appellant.*

Appeal from the United States District Court for the Eastern District of Kentucky at London.
No. 6:19-cr-00074-7—Claria Horn Boom, District Judge.

Argued: June 15, 2023

Decided and Filed: August 21, 2023

Before: MOORE, CLAY, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Stephen Ross Johnson, RITCHIE, DAVIES, JOHNSON & STOVALL, P.C., Knoxville, Tennessee, for Appellant. John Patrick Grant, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. **ON BRIEF:** Stephen Ross Johnson, Catalina L. C. Goodwin, RITCHIE, DAVIES, JOHNSON & STOVALL, P.C., Knoxville, Tennessee, for Appellant. John Patrick Grant, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. While facing charges for violating 18 U.S.C. § 1594(c), Defendant David Pennington improperly communicated with witnesses in

the case against him.  Pennington's § 1594(c) charge alleged that he participated in a conspiracy to engage in human trafficking in violation of 18 U.S.C. § 1591(a)(1), 1591(b)(1).  The government then charged Pennington with witness tampering, in violation of 18 U.S.C. § 1512(b)(1), and dismissed the § 1594(c) conspiracy charge when Pennington pleaded guilty to the witness-tampering charge.  When the district court sentenced Pennington, it applied the U.S. Sentencing Guideline that corresponds with his witness-tampering conviction, which prompted a series of cross-references to other guidelines.  The final guideline in that chain, U.S.S.G. § 2G1.1, applies to certain human-trafficking offenses and supplies two possible base-offense levels.  U.S. Sent'g Guidelines Manual § 2G1.1(a) (U.S. Sent'g Comm'n 2021).  Subsection (a)(1) provides a base-offense level of "**34**, if the offense of conviction is 18 U.S.C. § 1591(b)(1)"; subsection (a)(2) provides a base-offense level of "**14**, otherwise."  U.S.S.G. § 2G1.1(a)(1)–(2).  Despite the fact that Pennington had *not* been convicted of violating 18 U.S.C. § 1591(b)(1), and no other guideline permitted a court to treat Pennington as if he had been, the district court used subsection (a)(1)'s base-offense level of thirty-four as its starting point.  This was an error.  Accordingly, we **VACATE** Pennington's sentence and **REMAND** to the district court for resentencing under the properly calculated Guidelines range.

## I.  BACKGROUND

## A.  CONSPIRACY TO ENGANGE IN HUMAN TRAFFICKING

On November 21, 2019, the grand jury indicted Defendant David Pennington, charging him with one count of violating 18 U.S.C. § 1594(c).  Title 18 U.S.C. § 1594(c) establishes criminal liability for "[w]hoever conspires with another to violate section 1591."  Count one of the indictment alleged that Pennington had conspired to engage in human trafficking in violation of 18 U.S.C. § 1591(a)(1) and (b)(1).  R. 51 (First Superseding Indictment at 1–2) (Page ID #207–08).  Relevant here, under 18 U.S.C. § 1591(a)(1):

> Whoever knowingly . . . in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to

cause the person to engage in a commercial sex act . . . shall be punished as provided in subsection (b).

"[I]f the offense was effected by means of force, threats of force, fraud, or coercion," § 1591(b)(1) establishes a fifteen-year mandatory-minimum term of incarceration.

According to the indictment, the conspiracy ran from around September 2015 through October 2019. R. 51 (First Superseding Indictment at 1–2) (Page ID #207–08). In essence, Logan Ray Towery and numerous other individuals ran overlapping human-trafficking and drug-distribution operations. R. 539 (PSR ¶ 7) (Page ID #2762). The government alleged that Pennington "knew his neighbor Logan Ray Towery to prostitute young women" and that Pennington "paid several young women for sexual acts." R. 579 (Rearraignment Proceeding Hr'g Tr. at 31) (Page ID #3051).

## B. WITNESSES TAMPERING

A magistrate judge granted Pennington pretrial release as he awaited trial for his § 1594(c) conspiracy charge subject to certain conditions of release. R. 96 (Minute Order) (Page ID #333); R. 97 (Order Setting Conditions of Release 1–3) (Page ID #334–36). One condition barred Pennington from "all contact, direct[] or indirect[], with any person who is or may be a victim or witness in the investigation or prosecution . . . ." R. 97 (Order Setting Conditions of Release 2) (Page ID #335). Pennington violated this condition by communicating with two of the victims who were witnesses in the case against him. R. 565 (Bond Revocation Hr'g Tr. at 7–8, 11, 26) (Page ID #2861–62, 2865, 2880). Pennington and the government stipulated to the pretrial-release violation, and Pennington contested only whether home incarceration or detention was appropriate. *Id.* at 3, 34–35 (Page ID #2857, 2888–89). According to the magistrate judge, "Pennington admitted contact in various ways with two victims in the case beginning (as to one victim) on the same day of his release and continuing up until his arrest in August 2020. Pennington communicated both in-person and electronically with one victim before and after that victim's stay in jail. He had in-person contact with a second victim." R. 277 (Mag. J. Findings at 2) (Page ID #984). The government characterized Pennington's contact with one victim as "veiled threats." R. 565 (Bond Revocation Hr'g Tr. at 26) (Page ID #2880). The government described evidence of Pennington telling one victim that law enforcement

considered her a victim, telling her the questions he expected his counsel to ask her during cross examination in his criminal trial followed by answers to those questions, *id.* at 25 (Page ID #2879), calling her a liar and "insinuat[ing] that people are starting to identify her as a rat," *id.* at 26 (Page ID #2880), and offering gifts to the victim, *id.*; *see also* R. 579 (Rearraignment Hr'g Tr. at 30–32) (Page ID #3050–52). The magistrate judge ordered Pennington to remain in custody pending trial. R. 565 (Bond Revocation Hr'g Tr. at 45) (Page ID #2897).

In light of this conduct, on September 22, 2021, the government charged Pennington with witness tampering, in violation of 18 U.S.C. § 1512(b)(1), and violation of his pretrial-release conditions, in violation of 18 U.S.C. § 3147. R. 473 (Fourth Superseding Indictment at 3–4) (Page ID #2527–28). Shortly thereafter, Pennington pleaded guilty to the witness-tampering charge and the government dismissed all remaining charges against him—including the § 1594(c) conspiracy charge.[1] R. 491 (Plea Agreement ¶¶ 1–2) (Page ID #2573); R. 579 (Rearraignment Hr'g Tr. at 33) (Page ID #3053); R. 571 (Sentencing Hr'g Tr. at 13) (Page ID #2958) (granting the government's motion to dismiss the remaining charges). The plea agreement did not specify the applicable guidelines, the underlying offense level, or the criminal-history points to be used to calculate Pennington's sentence. R. 491 (Plea Agreement ¶¶ 5–6) (Page ID #2574–75).

## C.  SENTENCING

Ahead of Pennington's sentencing hearing for his witness-tampering conviction, the U.S. Probation Office filed a presentence investigation report ("PSR"). R. 539 (PSR) (Page ID #2759–88). The PSR identified a base-offense level of twenty-eight. *Id.* ¶ 79 (Page ID #2774). As elaborated upon below, the PSR arrived at twenty-eight by cross referencing among multiple guidelines to reach U.S.S.G. § 2G1.1, the guideline that applies to certain types of human trafficking. *Id.* The PSR applied the higher of U.S.S.G. § 2G1.1(a)'s two alternative base-offense levels. *See id.* Guideline § 2G1.1(a)'s higher base-offense level of thirty-four is to be used "if the offense of conviction is 18 U.S.C. § 1591(b)(1)," but otherwise, fourteen is the appropriate base-offense level. U.S.S.G. § 2G1.1(a)(1)–(2). The PSR then subtracted six levels

---

[1]Pennington waived his right to appeal his guilty plea and conviction but reserved his right to challenge his sentence on appeal. R. 491 (Plea Agreement ¶ 8) (Page ID #2575).

pursuant to one of the cross-referenced guideline's instructions and arrived at a base-offense level of twenty-eight. R. 539 (PSR ¶ 79) (Page ID #2774). The PSR then subtracted another three levels because of Pennington's acceptance of responsibility, bringing Pennington's total-offense level to twenty-five, *id.* ¶¶ 86–87 (Page ID #2774–75). The PSR identified a criminal-history category of I. *Id.* ¶ 93 (Page ID #2775). Accordingly, the PSR produced a Guidelines range of fifty-seven to seventy-one months of imprisonment, and one to three years of supervised release. *Id.* ¶¶ 113, 116 (Page ID #2779).

Pennington filed comments and requests for corrections to the PSR. R. 539 (PSR at 25–30) (Page ID #2783–88). According to the addendum to the PSR, Pennington's counsel "advised there are no objections to the presentence report that impact the guidelines calculation." *Id.* at 25 (Page ID #2783). His counsel conveyed to the probation officer that Pennington "emphasized and maintains his position that he was not criminally involved with Towery's human trafficking organization," and that he "fully acknowledges having sex with Towery's victims but denies any criminal responsibility for human trafficking." *Id.* Counsel filed a correction addressing this point. *Id.* at 29–30 (Page ID #2787–88). In response to the request for correction, the two addenda to the PSR stated that the "report does not hold Pennington responsible for being convicted of human trafficking." *Id.* at 25, 27 (Page ID #2783, 2785).

At sentencing, the district court used the same Guidelines calculation and range contained in the PSR. R. 571 (Sentencing Hr'g Tr. at 9) (Page ID #2954). The district court explained that it "beg[a]n at a base offense level of a 28, and that's under [§] 2[G1].1(a)(1),[2] which is the human trafficking offense less six points," and then subtracted three for acceptance of responsibility, to arrive at a total-offense level of twenty-five. *Id.* It explained that this placed Pennington within a Guidelines range of fifty-seven to seventy-one months of imprisonment. *Id.* at 10 (Page ID #2955). The district court then asked Pennington's counsel if they had "any objections related to the guideline range that [it] ha[d] just calculated," and counsel responded "[n]o." *Id.* Immediately thereafter, Pennington asked to speak to his counsel. *Id.* at 10–11 (Page

---

[2]Either the district court misspoke or there is a typographical error in the sentencing hearing transcript when referring to U.S.S.G. § 2S3.1(a)(1). There is no U.S.S.G. § 2S3.1(a)(1), and context clarifies that the district court was referring to U.S.S.G. § 2G1.1(a)(1).

ID #2955–56).  Counsel then told the district court that Pennington "was confused."  *Id.* at 11 (Page ID #2956).  Counsel explained the source of Pennington's confusion:  "The Court referenced the human trafficking as the underlying charge as the predicate to determining the guideline sentence for the witness tampering.  He got confused on whether there was still an impact of human trafficking.  I explained it to him."  *Id.*  The district court told Pennington:  "[Y]ou did not plead guilty to anything related to human trafficking.  But under the guidelines for your offense for the obstruction or witness tampering, it -- it references the guideline applicable to the underlying offense, and so that is why it impacts your guideline range."  *Id.*

The district court sentenced Pennington to twenty-nine months of incarceration with credit for the eighteen months that Pennington had already spent incarcerated, and a two-year term of supervised release.  *See id.* at 36–37, 42–43 (Page ID #2981–82, 2987–88).  After announcing the sentence, pursuant to *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), the district court asked defendant's counsel whether "there [were] any objections to the sentence that [it] just announced or the special conditions imposed that have not been previously raised"; Pennington's counsel responded "No."  *Id.* at 45 (Page ID #2990).  The district court then entered judgment.  R. 534 (Judgment) (Page ID #2736–42).  Pennington completed his incarceration term in September 2022 and is currently serving his two-year term of supervised release.  Appellant Br. at 2.

Pennington now appeals his sentence as procedurally and substantively unreasonable. Pennington argues that his sentence is procedurally unreasonable because the district court improperly applied U.S.S.G. § 2G1.1(a)(1)—a subsection of a guideline that expressly requires a *conviction* under 18 U.S.C. § 1591(b)(1)—even though he has not been convicted of violating § 1591(b)(1).  Appellant Br. at 27–35.  Pennington also challenges his sentence as substantively unreasonable because of how the district court weighed the supervised-release sentencing factors under 18 U.S.C. § 3583(c).  *Id.* at 41–44.

## II.  JURISDICTION

We have jurisdiction over this appeal despite the fact that Pennington has completed his custodial sentence.  "[A] completed custodial sentence may be appealed so long as the district

court would retain the discretion to reduce the sentence of supervised release on remand." *United States v. Albaadani*, 863 F.3d 496, 502–03 (6th Cir. 2017) (quoting *United States v. Solano-Rosales*, 781 F.3d 345, 355 (6th Cir. 2015)). As the government acknowledges, Gov't Br. at 12–13 n.3; Oral Arg. at 11:32–11:41, 12:10-12:33, because Pennington faced no minimum term of supervised release, the district court would have discretion to reduce Pennington's sentence. *See Albaadani*, 863 F.3d at 502–03; *Solano-Rosales*, 781 F.3d at 355 (finding no mootness where "there is no minimum supervised release term [thus allowing] . . . the district court [to] retain the discretion to reduce or eliminate Defendant's supervised release term"). Therefore, Pennington's subsequent release from prison in September 2022 does not moot this appeal because his supervised-release term is ongoing.

## III. PROCEDURAL REASONABLENESS

Our appellate review of a defendant's sentence considers "a district court's sentencing determination . . . for reasonableness." *Albaadani*, 863 F.3d at 504 (quoting *Solano-Rosales*, 781 F.3d at 351). This reasonableness review involves two components—procedural and substantive reasonableness. *Id.* Pennington first argues that the district court miscalculated his base-offense level. Appellant Br. at 29. According to Pennington, when the district court followed a series of guidelines pursuant to a cross-reference when calculating his base-offense level, it erred by applying U.S.S.G § 2G1.1(a)(1). *See id.* at 28–30. Rather than starting with a base-offense level of thirty-four under subsection (a)(1), Pennington contends that the district court should have instead used U.S.S.G § 2G1.1(a)(2)'s base-offense level of fourteen. *See id.* at 29–30. According to Pennington, doing so would have ultimately lowered his Guidelines range from fifty-seven to seventy-one months of imprisonment to a range of ten to sixteen months of imprisonment and would have thus rendered his current sentence of twenty-nine months of incarceration above the Guidelines range. Appellant Br. at 39–40. This is a procedural-reasonableness challenge. *United States v. Johnson*, 24 F.4th 590, 606 (6th Cir. 2022) (explaining our procedural-reasonableness inquiry includes challenges to "whether the district court '[] properly calculated the applicable advisory Guidelines range" (quoting *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007))); *United States v. Davis*, 751 F.3d 769, 773 (6th Cir. 2014) ("A sentence is procedurally unreasonable if, among other things, the district court 'fail[s]

to calculate (or improperly calculate[s]) the Guidelines range . . . .'" (alterations in original) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007))).

Pennington also brings a substantive-reasonableness challenge. "[W]e typically first address the procedural reasonableness of a sentence and do not analyze its substantive reasonableness unless the sentence is 'procedurally sound.'" *United States v. Adams*, 873 F.3d 512, 520 (6th Cir. 2017) (quoting *Bolds*, 511 F.3d at 581). Because Pennington's sentence is procedurally unreasonable, we do not address his substantive-reasonableness claim.

## A.  STANDARD OF REVIEW

Generally, we conduct our reasonableness review for both the substantive and procedural components using the abuse-of-discretion standard. *Gall*, 552 U.S. at 51; *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022). Although substantive-reasonableness claims do not need to be raised before the district court to be preserved, we do not apply an abuse-of-discretion review to unpreserved procedural-reasonableness claims. *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008). We instead review unpreserved procedural-reasonableness claims for plain error. *Id.* "A plain error is an error that is clear or obvious, and if it affects substantial rights, it may be noticed by an appellate court." *United States v. Hatcher*, 947 F.3d 383, 389 (6th Cir. 2020) (internal quotation marks omitted) (quoting *United States v. Barajas–Nunez*, 91 F.3d 826, 830 (6th Cir. 1996)). For a defendant to prevail under plain-error review, they "must show an error that was 'obvious or clear,' that affected his substantial rights and that this adverse impact seriously 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Fuller-Ragland*, 931 F.3d 456, 459 (6th Cir. 2019) (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)).

The parties vigorously dispute whether Pennington objected to the district court's Guidelines calculation and therefore dispute the proper standard of review. Appellant Br. at 22–23; Gov't Br. at 8. Fortunately, we need not resolve this dispute for two reasons. First, in this particular instance, the entirety of Pennington's procedural-reasonableness challenge turns on "the district court's interpretation and legal application of the Guidelines"—something that "[w]e

review de novo."**3** *United States v. Greer*, 872 F.3d 790, 794 (6th Cir. 2017); *see also Nunley*, 29 F.4th at 830 ("[T]he court's legal conclusions—including its interpretation of the Guidelines—are reviewed de novo."); *United States v. Shabazz*, 263 F.3d 603, 607 (6th Cir. 2001) ("The district court's application of the guidelines to calculate a defendant's offense level presents a question of law that we review de novo.").

Second, Pennington would prevail under either an abuse-of-discretion or plain-error standard. That is because, "[g]enerally, a district court plainly errs when it miscalculates the Guidelines range." *United States v. Honeysucker*, No. 21-2614, 2023 WL 142265, at *8 (6th Cir. Jan. 10, 2023); *United States v. McCloud*, 730 F.3d 600, 603 (6th Cir. 2013). This is true even when a district court sentences someone below an erroneously calculated Guidelines range and within the properly calculated Guidelines range. *United States v. Nicolescu*, 17 F.4th 706, 730–31, 731 n.9 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 1458 (2022), and *cert. denied sub nom. Miclaus v. United States*, 143 S. Ct. 523 (2022). As *Nicolescu* explained, "'the Guidelines range is the starting point for the district court's analysis[,]' and absent some indication that the district court would have imposed the same sentence regardless of the error, it is for the district court to 'decide whether, starting from the correct Guidelines range, a downward variance remains appropriate.'" *Id.* at 731 (alteration in original) (quoting *United States v. Montgomery*, 998 F.3d 693, 700 (6th Cir. 2021)). Therefore, such an error is not harmless and "even under plain-error review, [a defendant] is entitled to resentencing under a correctly calculated Guidelines range because the error [is] clear, it affect[s their] substantial rights, and it affect[s] the fairness of the proceedings below." *Id.* at 731 n.9.

## B.　USING U.S.S.G § 2G1.1(A)(1)'S BASE-OFFENSE LEVEL WITHOUT A CONVICTION UNDER 18 U.S.C. § 1591(B)(1)

"In construing the Guidelines, we employ the traditional tools of statutory interpretation, beginning with the text's plain meaning." *United States v. Hollon*, 948 F.3d 753, 757 (6th Cir. 2020) (quoting *United States v. Babcock*, 753 F.3d 587, 591 (6th Cir. 2014)). We must therefore "follow the clear, unambiguous language if there is no manifestation of a contrary intent."

---

**3**Where those conclusions rest on factual findings, we review the district court's factual findings for clear error. *Nunley*, 29 F.4th at 830.

*United States v. Oliver*, 919 F.3d 393, 400 (6th Cir. 2019) (quoting *United States v. Hayter Oil Co.*, 51 F.3d 1265, 1272 (6th Cir. 1995)).  The Guideline's plain meaning is conclusive "except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters."  *Id.* (internal quotation marks omitted) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)).  The Guideline's commentary "serves only to *interpret* the Guidelines' text, not to replace or modify it."  *United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (per curiam).

We begin with the relevant guidelines.  Pennington was convicted of witness tampering, in violation of 18 U.S.C. § 1512(b)(1).  R. 491 (Plea Agreement ¶ 1) (Page ID #2573); R. 579 (Rearraignment Hr'g Tr. at 33–34) (Page ID #3053–54); R. 571 (Sentencing Hr'g Tr. at 4) (Page ID #2949).  The Sentencing Guidelines' Statutory Index, Appendix A, which "specifies the offense guideline . . . applicable to the statute of conviction," instructs courts to apply U.S.S.G. § 2J1.2 for violations of 18 U.S.C. § 1512(b).  This begins what we will call *step one*, applying U.S.S.G. § 2J1.2.  Guideline § 2J1.2, which is titled "Obstruction of Justice," provides a base-offense level of fourteen, U.S.S.G. § 2J1.2(a), unless "the offense involved obstructing the investigation or prosecution of a criminal offense," in which case it instructs "apply[ing] § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than" the base-offense level of fourteen, adjusted for any specific offense characteristics, *id.* § 2J1.2(c)(1).

Next, based on the circumstances of this case and following U.S.S.G. § 2J1.2(c)(1), our *step two* requires applying U.S.S.G. § 2X3.1.  Guideline § 2X3.1 supplies a base-offense level of "6 levels lower than the offense level for the *underlying offense*," subject to minimum and maximum base-offense levels.  U.S.S.G. § 2X3.1(a)(1) (emphasis added); *see also id.* § 2X3.1(a)(2)–(3).  We must therefore determine which offense Pennington obstructed, find the appropriate guideline for that offense, use that guideline's base-offense level, and then subtract six.  *Id.* § 2X3.1(a)(1).  Here, because Pennington tampered with witnesses in relation to his § 1594(c) conspiracy charge, his underlying offense is violating § 1594(c) by conspiring to engage in human trafficking in violation of 18 U.S.C. § 1591(a)(1), (b)(1).  *See* R. 51 (First Superseding Indictment at 1–2) (Page ID #207–08).  But no specific guideline corresponds to 18

U.S.C. § 1594(c) in Appendix A. Accordingly, U.S.S.G. § 2X1.1(a) tells us that when no guideline for a specific conspiracy offense exists, we use "[t]he base offense level from the guideline for the substantive offense."[4] Thus, we derive Pennington's base-offense level for his underlying § 1594(c) conspiracy offense from the guideline that corresponds to the substantive offense. *See* U.S.S.G. § 2X1.1(a). Here, that is U.S.S.G. § 2G1.1, titled "Promoting a Commercial Sex Act or Prohibited Sexual Conduct with an Individual Other than a Minor." *See* U.S.S.G. App. A (listing U.S.S.G. §§ 2G1.1, 2G1.3, and 2G2.1 as the corresponding guidelines for violations of 18 U.S.C. § 1591); U.S.S.G. §§ 2G1.3, 2G2.1 (providing guidelines for crimes involving minors). In sum, U.S.S.G. § 2G1.1 supplies the starting point of Pennington's base-offense level because it is the guideline that corresponds with his underlying offense pursuant to U.S.S.G. §§ 2X3.1(a)(1), 2X1.1(a).

Neither step one nor step two is contested. Our caselaw is clear that the district court properly followed U.S.S.G. § 2J1.2(c)(1)'s instruction to apply U.S.S.G. § 2X3.1 (Accessory After the Fact)'s cross reference to determine Pennington's base-offense level—regardless of whether he had been convicted of human trafficking in violation of 18 U.S.C. § 1591. *United States v. Kimble*, 305 F.3d 480, 485 (6th Cir. 2002) ("It is not necessary for the government to prove facts sufficient to establish a defendant's guilt as an 'Accessory After the Fact' in order to impose a sentence under § 2X3.1."); *Greer*, 872 F.3d at 794 (same). Similarly, no one disputes that U.S.S.G. § 2G1.1(a) is the correct overarching guideline that provides the base-offense level of Pennington's underlying offense. Appellant Br. at 28–29 n.4; Gov't Br. at 6–8; *see also Kimble*, 305 F.3d at 485–86. Rather, the dispute before us concerns our next step, determining which of U.S.S.G. § 2G1.1(a)'s subsections—subsection (a)(1) or subsection (a)(2)—provides Pennington's base-offense level.

---

[4]U.S.S.G. § 2X1.1, titled "Attempt, Solicitation, or Conspiracy (Not Covered by a Specific Offense Guideline)" states in subsection (a): "Base Offense Level: The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." In certain instances, courts may then need to subtract three levels pursuant to § 2X1.1(b).

Guideline § 2G1.1(a) offers two very different possible base-offense levels depending on the existence of a specific criterion:

(1)  **34**, if the offense of conviction is 18 U.S.C. § 1591(b)(1); or

(2)  **14**, otherwise.

We must therefore decide whether the district court correctly used subsection (a)(1)'s base-offense level of thirty-four given that this subsection expressly references a *conviction* under 18 U.S.C. § 1591(b)(1), or if the court should have used subsection (a)(2)'s alternative base-offense level of fourteen given that Pennington was *not convicted* of violating 18 U.S.C. § 1591(b)(1). Pennington argues that if the district court had used § 2G1.1(a)(2), his base-offense level would have been fourteen and his Guidelines range would be ten to sixteen months of imprisonment.[5]  Appellant Br. at 39–40.

We find the answer to be apparent from the text and structure of the Guidelines. Some "guideline[s] (in the base offense level or in a specific offense characteristic) may *expressly* direct that a particular factor be applied *only if* the defendant was *convicted* of a particular statute." U.S.S.G. § 1B1.3 cmt. 7 (emphasis added). Other guidelines do not. *See id.*  The latter instead provide a specific base-offense level using language such as, "if the offense *involved conduct* described in" a particular statute. *See id.* (emphasis added) (quoting U.S.S.G. § 2A3.4(a)(2)). Guideline § 1B1.3's comment seven tells us how to approach these two different types of guidelines. "Unless such an express direction is included, conviction under the statute is not required. Thus, use of a statutory reference to describe a particular set of circumstances does not require a conviction under the referenced statute." *Id.*  The comment provides examples: U.S.S.G. § 2A3.4(a)(2), which provides a certain base-offense level "'if the offense *involved conduct* described in 18 U.S.C. § 2242,'" can apply to a defendant who has *not* been convicted of violating 18 U.S.C. § 2242, whereas U.S.S.G. § 2S1.1(b)(2)(B), which provides a specific base-offense level "[i]f the defendant 'was *convicted* under 18 U.S.C. § 1956,'" applies only if the defendant was *convicted* of violating 18 U.S.C. § 1956. U.S.S.G. § 1B1.3 cmt. 7 (emphasis

---

[5]Pennington would still be subject to the same Guidelines range of one to three years for his supervised-release term under U.S.S.G. § 5D1.2 because his conviction for witness tampering is a Class C Felony. R. 539 (PSR ¶ 116) (Page ID #2779); Appellant Br. at 41.

added) (first quoting U.S.S.G. § 2A3.4(a)(2); and then quoting *id.* § 2S1.1(b)(2)(B)). The human-trafficking guideline that the district court ultimately applied to determine Pennington's base-offense level, § 2G1.1, is one of the guidelines with a conviction requirement. *See* U.S.S.G. § 2G1.1(a)(1) (providing a base-offense level of "**34**, if the offense of conviction is 18 U.S.C. § 1591(b)(1)").

Guideline § 2G1.1(a)(1)'s express direction to use a base-offense level of "**34**, if the offense of conviction is 18 U.S.C. § 1591(b)(1)," plainly requires that a base-offense level of thirty-four should be applied *only if* a defendant has been convicted under 18 U.S.C. § 1591(b)(1). Guideline § 2G1.1 does not define "conviction." We "presume that an undefined word comes with its ordinary meaning, not an unusual one." *United States v. Riccardi*, 989 F.3d 476, 488 (6th Cir. 2021). To state the obvious, a conviction is defined as "[t]he act or process of judicially finding someone guilty of a crime[,] the state of having been proved guilty," and a "judgment (as by a jury verdict) that a person is guilty of a crime." Conviction, Black's Law Dictionary (11th ed. 2019). Very clearly, § 2G1.1(a)(1) identifies, as a condition to its applicability, a judicial finding that a person is guilty of violating 18 U.S.C. § 1591(b)(1). The structure of the Guidelines confirms this plain reading. The fact that some guidelines and guideline subsections apply only if a defendant has been convicted under a specific statute, while other guidelines apply whenever a defendant's conduct conforms to conduct described in a particular statute, reveals a desire to distinguish between convicted conduct and non-convicted conduct in sentencing. Subsection (a)(1)'s more severe punishment for a conviction under one specific statute when considered alongside other guidelines that refer only to conduct (such as U.S.S.G. § 2A3.4(a)(2)) and § 2G1.1(a)(2)'s catchall alternative that less drastically punishes a defendant for anything else demonstrate that the Sentencing Commission, upon congressional review, "plainly chose a different approach to punishment" for convictions under 18 U.S.C. § 1591(b)(1). *See Lora v. United States*, 143 S. Ct. 1713, 1719 (2023) (holding that 18 U.S.C. § 924(c)'s "consecutive-sentence mandate" applied "only to terms of imprisonment imposed under . . . subsection[(c)]" because of the subsection's "plain terms" and noting that "Congress put subsection (j) in a *different* subsection of the statute," *id.* at 1717). We conclude that the

Sentencing Commission's decision to draft and Congress's decision to approve[6] some guidelines in a manner that supplies a specific base-offense level any time a defendant's *conduct* overlaps with the conduct described in a criminal statute, while other guidelines supply a base-offense level only if a defendant has been *convicted* of violating a specific statute, constitutes a purposeful distinction that we cannot ignore. We must honor this intentional use of language and Congress's approval of this distinction. *See Lora*, 143 S. Ct. at 1720 ("[W]e must implement the design Congress chose."); *see also Havis*, 927 F.3d at 385–86.

We are not the first panel to recognize this plain reading of the Guidelines. *See Nicolescu*, 17 F.4th at 730; *cf. United States v. Nedelcu*, 46 F.4th 446, 450 (6th Cir. 2022). *Nicolescu* found that the district court erred when it applied a guideline enhancement that required a conviction under 18 U.S.C. § 1030(a)(5)(A) when the defendants had "not [been] convicted of an offense under § 1030(a)(5)(A)." 17 F.4th at 730. Instead, the defendants had been convicted of general conspiracy under 18 U.S.C. § 371 where "one of the [three] objects of [the] conspiracy" alleged in the indictment was a violation of § 1030(a)(5)(A). *Id.*; *see also* Brief for Defendant at 30–32, *United States v. Nicolescu*, 17 F.4th 706 (6th Cir. 2021) (No. 19-4273); Brief for Government at 63–64, *United States v. Nicolescu*, 17 F.4th 706 (6th Cir. 2021) (No. 19-4273) (acknowledging U.S.S.G. § 1B1.3's comment seven and conceding that the guideline's reference to a conviction under the particular statute barred application of that guideline to the defendants). This error, alongside another enhancement error, "resulted in six levels being erroneously added," and required that we remand for resentencing. *Nicolescu*, 17 F.4th at 730–31. In *Nedelcu*, we similarly acknowledged a defendant's argument that he was not subject to U.S.S.G. § 2S1.1(b)(2)(B) because it required a conviction under 18 U.S.C. § 1956, and no § 1956 conviction existed. 46 F.4th at 448–50. We observed that the argument challenging application of the guideline "appear[ed] strong" "[o]n its face" given that "we must 'follow the clear, unambiguous language if there is no manifestation of a contrary intent.'" *Id.* at 450 (quoting *Oliver*, 919 F.3d at 400). We nonetheless found that, because another guideline required a court to treat the defendant as if he had been convicted of violating § 1956, U.S.S.G. § 2S1.1(b)(2)(B) could still apply. *Id.* at 450–53. *Nedelcu* teaches that, unless another guideline

---

[6]*See* 28 U.S.C. § 994(p); U.S.S.G. § 1A1(2).

United States v. Pennington

permits us to treat Pennington's non-convicted conduct of conspiring to commit human trafficking as a § 1591(b)(1) conviction, this plain reading of U.S.S.G. § 2G1.1(a)(1) controls, and Pennington's base-offense level must be derived from U.S.S.G. § 2G1.1(a)(2) instead.

The two guidelines that could permit us to treat Pennington as if he were convicted of violating 18 U.S.C. § 1591(b)(1) are inapplicable here. *First*, in instances when a defendant has been *convicted* under a conspiracy statute, certain guidelines *could possibly* permit a court to treat a conviction of conspiring to violate a specific statute as a conviction under that statute for the purposes of determining a base-offense level. U.S.S.G. § 1B1.3 cmt. 7; *see also id.* § 2X1.1(a). Guideline § 1B1.3's comment seven specifically addresses how to approach guidelines that explicitly require a conviction under a specific statute when a defendant has been *convicted* of conspiring to violate that statute. It states that "[u]nless otherwise specified, an express direction to apply a particular factor only if the defendant was convicted of a particular statute *includes* the determination of the offense level where the defendant was *convicted of conspiracy*, attempt, solicitation, aiding or abetting, accessory after the fact, or misprision of felony in respect to that particular statute." U.S.S.G. § 1B1.3 cmt. 7 (emphasis added). Here, too, comment seven to U.S.S.G. § 1B1.3 offers an example using U.S.S.G. § 2S1.1(b)(2)(B) and an accessory-after-the fact conviction:

> For example, § 2S1.1(b)(2)(B) (which is applicable only if the defendant is convicted under 18 U.S.C. § 1956) would be applied in determining the offense level under § 2X3.1 (Accessory After the Fact) in a case in which the defendant was convicted of accessory after the fact to a violation of 18 U.S.C. § 1956 . . . .

U.S.S.G. § 1B1.3 cmt.7. Pennington has cited a few cases in which courts have considered applying U.S.S.G. § 2G1.1(a)(1) when a defendant has been *convicted* of conspiring to violate 18 U.S.C. § 1591(b)(1). Appellant Br. at 36–39. But because Pennington lacks such a conviction, those cases are unhelpful here, and this principle is inapplicable in determining the procedural reasonableness of Pennington's sentence. Because such facts and legal questions are not before us,[7] we leave for a future panel the question whether § 2G1.1(a)(1)'s base-offense level of thirty-

---

[7]We have not, for example, explored Pennington's argument that Congress's decision to impose a mandatory-minimum sentence for violations of 18 U.S.C. § 1591(b)(1) implicates whether convictions under other sections that are not subject to the mandatory minimum can be treated the same for the purposes of sentencing. *See* Appellant Br. at 34–35.

four can be applied to an individual who was *convicted* of conspiring to violate 18 U.S.C. § 1591(b)(1).

*Second*, when faced with a similar situation in which a district court sentenced a defendant under a guideline that required a conviction for violating a specific statute that the defendant had not been convicted under, we found that U.S.S.G. § 1B1.2(c) applied and required that we treat the defendant as if he had been convicted under that statute. *Nedelcu*, 46 F.4th at 450–53. In *Nedelcu*, the grand jury indicted Nedelcu for (1) "conspiracy to violate RICO, in violation of 18 U.S.C § 1962(d); [(2)] conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and [(3)] conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h)." *Id.* at 448. Nedelcu pleaded guilty to the § 1962(d) RICO conspiracy charge, and the government dismissed the remaining charges. *Id.* Similar to Pennington's sentencing, Nedelcu's sentencing involved "a cascading series of cross-references," including an increased money-laundering offense level under U.S.S.G. § 2S1.1(b)(2)(B). *Id.* at 449. Guideline § 2S1.1(b)(2)(B) expressly requires a conviction for money laundering under 18 U.S.C. § 1956—a charge that the government had dismissed. *Id.* at 449–50. Recognizing U.S.S.G. § 1B1.3's comment seven, *id.* at 453, we determined that "another Guidelines provision shows that an actual conviction [of the particular statute] is not necessary in all circumstances," *id.* at 450.

We reasoned that U.S.S.G. § 1B1.2(c) required us to treat Nedelcu as if he had been convicted of violating 18 U.S.C. § 1956 because of the contents of his plea agreement. *Id.* Guideline § 1B1.2(c) states that "[a] plea agreement . . . containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)." *Nedelcu* explained that U.S.S.G. § 1B1.2(c) "means that a court must sentence a defendant 'as if' he had been convicted of an offense if his plea agreement specifically establishes that he committed that offense. No formal conviction for the additional offense is required to apply § 1B1.2(c)." 46 F.4th at 450. A plea agreement can establish that a defendant committed an additional offense for sentencing purposes through factual stipulations "that allow the court to conclude that [the defendant's] conduct satisfied the elements of an additional offense." *Id.* at 451; *see also id.* at 450. Thus,

under *Nedelcu*, if § 1B1.2(c) applied and the plea agreement established that Pennington committed the underlying offense, Pennington could have been treated as if he had been convicted of violating 18 U.S.C. § 1591(b)(1) and his sentence would "not [have] run afoul of" the Guidelines' conduct–conviction distinction and the principle observed in U.S.S.G. § 1B1.3's comment seven. *See id.* at 453.

The government, however, has never argued that U.S.S.G. § 1B1.2(c) applies here. It declined to engage in argument on this point even though Pennington argued in his opening brief that U.S.S.G. § 1B1.2(c) did not apply. Appellant Br. at 27–28; *see generally* Gov't Br. In fact, the government even acknowledged in its brief that "Pennington challenges his base offense level because he did not agree in the plea agreement that he committed human trafficking"—yet it never refuted Pennington's claim or argued that the facts in Pennington's plea agreement sufficiently supported each element of § 1591(b)(1) such that we could treat him as if he had been convicted of violating § 1591(b)(1). Gov't Br. at 8; *see also id.* at 7. The government also failed to address *Nedelcu* even though Pennington's opening brief cited it and distinguished it from Pennington's case. Appellant Br. at 28; *see generally* Gov't Br. The government's noteworthy silence on this argument before our court constitutes forfeiture. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will treat an 'argument' as 'forfeited when it was not raised in the opening brief.'" (quoting *Golden v. Comm'r*, 548 F.3d 487, 493 (6th Cir. 2008))).

Even so, Pennington's plea agreement fails to address all of the requisite elements of 18 U.S.C. § 1591(b)(1). The plea agreement states that the government can prove and Pennington admits that: Pennington "knew his neighbor, Logan Ray Towery, to prostitute young women," "paid several young women for sexual acts," "had knowledge that Towery was arrested . . . and charged with conspiracy to engage [in] human trafficking, in violation of 18 U.S.C. § 1594(c)," and "was subsequently arrested for the same offense." R. 491 (Plea Agreement ¶ 3) (Page ID #2573–74); *see also* Gov't Br. at 7. The plea agreement does not address, for example, the requirement under 18 U.S.C. § 1591(b)(1) that "the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2)," or the interstate-commerce

element described in 18 U.S.C. § 1591(a)(1).  Accordingly, U.S.S.G. § 1B1.2(c) does not apply here.

We of course acknowledge that the obstruction guideline anticipates a series of cross-references that may hold a defendant accountable for conduct that did not result in a conviction. *See* U.S.S.G. § 2J1.2(c)(1) (instructing courts to cross reference when a defendant has obstructed a criminal investigation or prosecution); *id.* at background cmt.; *Kimble*, 305 F.3d at 485–86. Our plain reading of the Guidelines is consistent with § 2J1.2(c)(1)'s context.  We abide by § 2J1.2(c)(1)'s instruction and context by deriving Pennington's base-offense level from a human-trafficking guideline, § 2G1.1—despite the fact that he was not convicted of any sort of human-trafficking offense.  It is at this point, however, that we encounter a textual condition that the present circumstances cannot satisfy.  And nothing in § 2J1.2 affords us permission to ignore an express requirement contained in the text of the specific guideline that we are ultimately applying.   Additionally, speaking directly to the conduct–conviction distinction, U.S.S.G. § 1B1.3's comment seven lists which types of convictions we can treat as a conviction for the substantive offense when a guideline contains "an express direction to apply a particular factor only if the defendant was convicted of a particular statute."  U.S.S.G. § 1B1.3 cmt. 7.  It lists the following types of convictions:  "convict[ions] of conspiracy, attempt, solicitation, aiding or abetting, accessory after the fact, or misprision of felony in respect to that particular statute."  *Id.* Excluded from this list is an instruction to treat a conviction for witness tampering or obstruction as a conviction of the offense that the defendant tampered with or obstructed.

Ultimately, a straightforward application of statutory interpretation answers the question before us.  We hold that because Pennington has not been convicted of violating 18 U.S.C. § 1591(b)(1) and no guideline permits us to treat him as if he had been, U.S.S.G. § 2G1.1(a)(2) provides his base-offense level, which is fourteen.  Unwinding the series of cross references that we have applied results in a base-offense level of fourteen under U.S.S.G. § 2J1.2(a).  That is because U.S.S.G. § 2X3.1(a)(1) requires that we subtract six levels from Pennington's § 2G1.1 base-offense level, yielding a base-offense level of eight.  But because eight is less than fourteen, U.S.S.G. § 2J1.2(a) provides Pennington's actual base-offense level of fourteen.  *See id.* § 2J1.2(c); Appellant Br. at 28–29 n.4; Gov't Br. at 5–6.

We further hold that the district court plainly erred by misinterpreting and miscalculating the Guidelines. *See Nicolescu*, 17 F.4th at 730–31, 731 n.9 (holding that the district court plainly erred when it applied an enhancement incorrectly even though the district court sentenced the defendant below both the erroneously calculated Guidelines range and the properly calculated Guidelines range). "[E]ven under plain-error review, [a defendant] is entitled to resentencing under a correctly calculated Guidelines range because the error [is] clear, it affect[s their] substantial rights, and it affect[s] the fairness of the proceedings." *Id.* at 731 n.9. The error is clear because a plain reading of the Guidelines required a conviction under 18 U.S.C. § 1591(b)(1) in order to apply U.S.S.G § 2G1.1(a)(1) and no guideline permitted that we treat Pennington as if he had been convicted of violating § 1591(b)(1)—a principle endorsed by our prior published opinions, *see id.* at 730–31; *Nedelcu*, 46 F.4th at 450.

Finally, the fact that what remains of Pennington's sentence is only his term of supervised release does not bar a finding of plain error. *See United States v. Inman*, 666 F.3d 1001, 1006–07 (6th Cir. 2012) (per curiam). The government argues that reducing Pennington's sentence "would provide him no benefit" and would not correct a miscarriage of justice, Gov't Br. at 13, because Pennington has "completed his imprisonment term," *id.* at 12. But this argument fails for the same reason the case is not moot. On resentencing, the district court retains discretion to reduce his sentence of supervised release if it finds that Pennington served more prison time than necessary. The Guidelines' miscalculation constitutes plain error.

## IV. CONCLUSION

For the foregoing reasons, we **VACATE** Pennington's sentence and **REMAND** for resentencing. As Pennington has served the full term of his incarceration sentence, the district court should employ the new Guidelines' calculation mandated by this opinion with an eye toward determining Pennington's term of supervised release.